49 N.J. Super. 10 (1958)
138 A.2d 747
MARY CLARKSON, PLAINTIFF-APPELLANT,
v.
JOHN R. KELLY AND ELSIE M. KELLY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 27, 1958.
Decided February 6, 1958.
*12 Before Judges CLAPP, JAYNE and SCHETTINO.
Mr. Joseph S. Slowinski argued the cause for plaintiff-appellant (Mr. Rodman C. Herman, attorney and on the brief).
Mr. Emil W.A. Schumann, defendant's attorney, argued the cause for defendants-respondents (Mr. Richard A. McGrath, on the brief).
The opinion of the court was delivered by SCHETTINO, J.A.D.
Plaintiff appeals from a judgment of the Chancery Division, Superior Court, vacating an order of voluntary dismissal without prejudice, entering a judgment of $1,000 less costs in favor of defendant based upon an alleged settlement of the cause of action and vacating a writ of attachment.
Plaintiff's action was upon a contract in the sale of certain airplane parts, for an accounting by the defendant agent, John R. Kelly, for damages arising from the breach of a fiduciary duty, and to set aside a fraudulent conveyance from defendant-husband to defendant-wife. The trial was set for May 23, 1957. The day before, plaintiff's attorney appeared before the trial judge assigned to the case, requested permission for a voluntary dismissal or for an adjournment of the trial on the ground that one of the witnesses, a *13 former attorney of defendant-husband, was engaged elsewhere in a criminal case and could not be present to testify. The trial judge refused to pass upon the request at that time, stating that the request would be decided on day of trial.
Plaintiff's attorney negotiated that evening with defendants' attorney and finally agreed upon a settlement of $1,000, a sum admittedly acceptable to their respective clients. The attorneys agreed to appear before the trial court on May 23, 1957 and put the settlement on the record. Plaintiff's attorney, upon his appearance in court, stated that late in the previous evening he suffered a change of heart and decided that such a settlement would be improvident for his client, that he could not in conscience permit her to accept it, and that about 8:00 A.M. that day he advised defendants' attorney of his change of heart. He then moved for a voluntary dismissal without prejudice. His reasons on argument were that:
"I felt the reason I was entering into a settlement was that I was forced into it because either I had to go on today or have it dismissed with prejudice. * * *
In my own mind I do not feel the settlement now under the terms offered would be fair. The reason I went into the settlement is that I feel that I am more or less a victim of a system. I was being forced on a case I am not ready to try because one of my witnesses is not ready to testify for me. And I do not feel I should subpoena an attorney. * * * In fairness to my client I cannot settle the case. I feel, I felt that either I had to settle the case as offered or have the case dismissed with prejudice. I had no choice. * * *
I know the Court's position. But it just doesn't seem right to me. Where the Judges are being rushed and where the attorneys are being rushed and the consequences are that you have to take unjust settlements.
I came all the way up this morning but I feel it is unfair to my client. I do not want to find myself out on the street."
Plaintiff's attorney also stated that he intended to file immediately another attachment suit for the same cause of action if his application for a voluntary dismissal would be granted.
*14 Defendants' attorney objected to the application pointing out that the attorneys, at most:
"were at the beginning about $750 apart and then we were about $500 apart and then $300 apart and finally yesterday we agreed on a settlement figure.
The attorney for the plaintiff prepared the papers, we notified our clients to send in the check. It was not a forced settlement. At the most we were $200 apart then we were $100 apart and finally we agreed on a settlement figure. * * * He has settled the case and why should he not be held to it? It certainly was not a forced settlement. The case was settled and I do not think the attorney for the plaintiff should be allowed to do this.
He might not like his cause of action and he might start a new suit. Sometimes a person cannot be permitted to bring in a new cause of action. Why should he be permitted to do it on the case on the day it is to be tried?"
The court after further discussion granted the application to dismiss without prejudice to starting a new suit and stated that he would withhold the signing of the order of dismissal until plaintiff's attorney had an opportunity to prepare and file the necessary papers in the new attachment suit. The judge pointed out to counsel that he would be on his assignment in the Appellate Division the following Monday  which was May 27, 1957  and counsel could therefore send the order of dismissal to his Appellate Division Chambers or submit it to the trial judge regularly assigned to the vicinage. Late in the afternoon of May 23 plaintiff was served with a notice of motion for judgment on behalf of defendants on the ground that the settlement agreed to the day before was a binding agreement. This motion was returnable June 7, 1957 before the regular judge of the vicinage.
The record shows that thereafter two orders were transmitted to the second judge by plaintiff's attorney. At argument we were informed that on June 3, 1957 the first judge called plaintiff's attorney by telephone and told him that he had the original papers. He directed him to deliver to him a third copy of all these papers. Plaintiff's attorney did so that day. At that time plaintiff's attorney informed this judge of the pending May 23, 1957 motion before the *15 second judge and was told by the judge that the motion had to be argued before the second judge since he was reassigned to the Appellate Division. Without notice to defendants' attorney the judge signed the order dismissing this suit and a second order directing a writ of attachment in the substitute action. It is noted that these two orders are simple, short and consistent with the judge's oral determinations of May 23, 1957.
Plaintiff's attorney was late for the hearing before the second judge on defendants' motion on June 7, 1957 due to transportation difficulty, and did not have an opportunity to present his argument even though the motion was purposely heard last. Defendants' application was granted. On June 21, 1957, upon plaintiff's motion to vacate the alleged judgment on the motion of June 7, 1957 (which in fact was never signed or entered) and upon defendants' motion to vacate the order of dismissal of June 3, 1957 and to set aside the writ of attachment, the second judge rendered and signed the judgment which is the subject of this appeal.
Our examination of the record brings us to the conclusion that all the facts brought to the attention of the second judge were the same facts brought to the attention of the first judge. We find  except for emphasis in briefs and argument  that factually the same situation confronted both judges at the trial level. We are therefore met with a problem of two divergent decisions on the same set of facts, made by co-equal judges at the trial level. The ultimate question is, should the second judge have vacated the orders of the first judge?
The first question raised on appeal is the authority of the second judge to hear and determine the application to vacate the June 3, 1957 orders of the first judge. R.R. 4:62-2 provides in part:
"On motion, with briefs, and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (a) * * * surprise * * * or (f) any other reason justifying relief from the operation of the judgment or order." *16 Certainly, if the first judge had been available he would have the authority to reconsider his oral determinations of May 23 and his orders of June 3. In the case of Bowman v. Bambara, 28 N.J. Super. 92, 97 (App. Div. 1953), construing R.R. 4-62-2 we said:
"It is clear that relief from the operation of a judgment for reasons set forth by the aforementioned rule rests in the discretion of the trial court. * * * In the exercise of that discretion, it has been held to be not arbitrary, vague, or fanciful, if governed by established principles of law.
`Concisely it is concerned with the question whether justice requires that relief be given under the particular facts established. * * * The exercise of such discretion will not be disturbed on appeal or review unless it has been clearly abused. * * *' State v. Bank, 4 N.J. 482, 485 (1950)."
See also Schulwitz v. Shuster, 27 N.J. Super. 554, 558 (App. Div. 1953).
In T C F Film Corp. v. Gourley, 240 F.2d 711, 714 (3 Cir. 1957), the court discussed the rule that judges of coordinate jurisdictions sitting in the same court and in the same case should not overrule the decisions of each other. The court stated a basic reason for the rule is "that we regard it as a necessary rule of judicial comity to preserve the orderly functioning of the judicial process." But, the court went on to state:
"there may be exceptional circumstances under which the rule is not to be applied. Such circumstances exist when the judge who made the original decision is not available to consider the application to rehear and reverse his decision. If the judge who made the decision dies or resigns from the court he obviously is no longer available to reconsider it and such reconsideration must perforce be by another judge, if it is to be had at all. Likewise if the decision has been made by a judge temporarily assigned to the court for the hearing of a specified case and his assignment is terminated he is no longer available to entertain an application for rehearing and it must accordingly be considered by another judge."
See also numerous authorities cited in footnote 2 of page 713, including 132 A.L.R. 14, 30; 33 C.J., Judges, § 99; 21 C.J.S., Courts, § 501; and Plattner Implement Co. v. International Harvester Co., 133 F. 376, 378-379 (8 Cir. *17 1904). We hold that since the first judge was not available because of his assignment out of the trial division and his unavailability for a hearing on the motions, the second judge had the authority to hear and determine the June 7 and June 21 applications in the exercise of his judicial discretion.
This court has defined "judicial discretion" in Smith v. Smith, 17 N.J. Super. 128, 132 (App. Div. 1951):
"[As] the option which a judge may exercise between the doing and the not doing of a thing which cannot be demanded as an absolute legal right, guided by the spirit, principles and analogies of the law, and founded upon the reason and conscience of the judge, to a just result in the light of the particular circumstances of the case. 23 Words & Phrases 278; Brandon v. Board of Commissioners of Town of Montclair, 124 N.J.L. 135 (Sup. Ct. 1940); affirmed 125 N.J.L. 367 (E. & A. 1940); Beronio v. Pension Commission of Hoboken, 130 N.J.L. 620 (E. & A. 1943); Hoffman v. Maloratsky, 112 N.J. Eq. 333 (E. & A. 1933)."
We there emphasized the two restrictions imposed upon us as an Appellate Court to warrant us in nullifying a ruling of a trial court made in the exercise of its conceded discretion. At page 133 of 17 N.J. Super. we stated:
"* * * The first is that the judicial action must have been clearly unreasonable in the light of the accompanying and surrounding circumstances, and the second condition is that the ruling must have resulted prejudicially to the rights of the party complaining.
With relation to the first condition it is not to be supposed that a mere difference in judicial opinion concerning the feasibility, expediency or pragmatical propriety of the ruling is synonymous with abuse of judicial discretion. State v. Wood, 23 N.J.L. 560, 564 (E. & A. 1847); Day v. Donohue, 62 N.J.L. 380, 383 (E. & A. 1898).
Anent the second condition, Justice Southard in the early case of Ogden v. Gibbons, 5 N.J.L. 612 ([*]518) (Sup. Ct. 1819), remarked (at page 626 ([*]531)): `But the inquiry always is, Has injustice been done? Has the party been injured? If he have not, no good reason can be given why he should receive the favor of trying his cause over again.' In accord, Wait v. Krewson, 59 N.J.L. 71 (Sup. Ct. 1896). Essentially it is the manifest denial of justice to a party that constitutes an abuse of discretion."
See also Hartpence v. Grouleff, 15 N.J. 545, 548 (1954), and the cases cited by the Appellate Division in the same cause 28 N.J. Super. 125, 128 (App. Div. 1953).
*18 Query, then: Even over and above "judicial comity," should there be required of the second trial judge in this cause lesser restrictions in his examination and decision of the first trial judge's orders than we impose upon ourselves? Are not his determinations limited by the same principles as limit us in our determination on a review of the exercise of judicial discretion by a trial judge? We feel that before a second trial judge can vacate an order of another trial judge on the same set of facts he must determine whether or not the first trial judge's action "was without basis in law or fact, or both, with the result that there was a denial of justice under the law." Hartpence v. Grouleff, supra (15 N.J. at page 548). Had the second judge applied these principles on the record before him, we hold that he could not, in the proper exercise of his judicial discretion, have vacated the order of the first judge in dismissing the action without prejudice.
We next consider the effect of the settlement of May 22, 1957 in our determination. In Kupper v. Barger, 33 N.J. Super. 491, 494 (App. Div. 1955) we said:
"It is undoubtedly the policy of our courts to presume unless the contrary appears that a stipulation entered into by the attorneys in open court respecting the terms of the settlement of the pending action is authorized by their clients. Bernstein & Loubet, Inc. v. Minkin, 118 N.J.L. 203 (E. & A. 1937). Assuredly such stipulations and their enforcement are subject to the sound discretion and control of the court. Howe v. Lawrence, 22 N.J.L. 99 (Sup. Ct. 1849); Hygrade Cut Fabric Co. v. United States Stores Corp., 105 N.J.L. 324 (E. & A. 1929); Martin v. Lehigh Valley R.R. Co., 114 N.J.L. 243 (E. & A. 1935)."
It is also true that ordinarily the court will not inquire into the adequacy or inadequacy of the consideration of a compromise settlement fairly and deliberately made. See DeCaro v. DeCaro, 13 N.J. 36, at page 44 (1953), and the comprehensive authorities cited by Mr. Justice Jacobs. Plaintiff's counsel  in the portion of the record stated above  presented to the court on May 23 his version of why he had agreed to the settlement. Defendants' attorney also gave his version of the settlement and his reasons why the settlement should *19 be held binding on plaintiff. The issue as to whether or not the plaintiff should be bound by the settlement was squarely before the court. The court  in the exercise of its discretion  refused defendants' plea to enforce the settlement. 5 Williston on Contracts (rev. ed. 1937), § 1428, p. 4000. On the basis of the principles hereinabove stated we find no basis for the second judge's contrary determination, nor do we find any basis for the exercise by us of our right to make a new or amended finding. Schack v. Trimble, 48 N.J. Super. 45, 52 (App. Div. 1957); R.R. 1:5-4(b).
Judgment reversed, costs on appeal to abide the trial of the second attachment suit.