257 N.J. Super. 203 (1992)
608 A.2d 377
GREGORY BROWN, PLAINTIFF-RESPONDENT,
v.
LOUIS PUENTE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted April 14, 1992.
Decided June 2, 1992.
*204 Before Judges PRESSLER, SHEBELL and D'ANNUNZIO.
Chierici & Wright, attorneys for appellant (Donald R. Chierici, Jr., on the brief).
Richard L. Freedman, attorney for respondent.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This appeal requires us to address important procedural questions respecting the right of persons subject to the so-called verbal threshold of N.J.S.A. 39:6A-8a to bring a common-law negligence action to recover the non-economic losses they sustain in automobile accidents where there is a genuine dispute as to whether the threshold has been met. We hold that the disputed issue is to be determined at trial, not before trial, and by the jury, not the judge.
Plaintiff Gregory Brown brought this action to recover damages for soft tissue back and neck injuries he suffered when the automobile in which he was a passenger was struck by a vehicle owned and operated by defendant Louis Puente. On leave granted defendant appeals from a partial summary judgment *205 entered by the trial court denying his motion to dismiss the action by reason of plaintiff's failure to meet the verbal threshold prescribed by N.J.S.A. 39:6A-8a and granting plaintiff's cross-motion for a declaration that he did meet the threshold. We affirm the denial of defendant's motion but reverse the grant of plaintiff's motion.
The accident occurred on July 11, 1989. Plaintiff, then seventeen, was on his summer vacation between his junior and senior years in high school. His doctors' reports attest to cervical and lumbosacral strain and sprain accompanied by chronic pain and objectively determined limitation of motion. The treating physician's report of an examination conducted on November 29, 1991, more than two years after the accident, continues to report significant limitation of motion of both the cervical and lumbosacral spine accompanied by marked tenderness, muscle spasm and pain. The physician's conclusion was that "... these injuries are of a permanent nature especially since they have lasted as long as they have after the accident and course of intensive physical therapy." Plaintiff's own certifications attest to his severe chronic pain since the accident, his having had to give up high school athletics and particularly track at which he had excelled in his first three years of high school, and the adverse effect of the injury on his ability to manage as a college student since he is unable to sit or read or study for long periods of time.
Against the foregoing characterization of plaintiff's injuries and their effect on him is the report of the defense physician who examined plaintiff on August 14, 1990. The physician reports plaintiff's complaints of daily headaches, his lack of complaint about his neck or back, the lack of objective findings of a continuing orthopedic disability referable to the accident, and the physician's opinion that plaintiff indeed suffered from no continuing orthopedic disability.
The trial judge, responding to defendant's motion and plaintiff's cross-motion, concluded that the issue of the verbal *206 threshold could be decided on these proofs alone without an evidential hearing. He also concluded that despite the apparent dispute of plaintiff's condition by defendant's examining physician, plaintiff had satisfied the verbal threshold. While we are persuaded that the questions raised by the record on the motion respecting plaintiff's meeting of the verbal threshold precluded the grant of defendant's motion to dismiss, those questions were not resolvable in plaintiff's favor either before trial or by the judge. Consequently, we are satisfied that the trial judge erred in granting plaintiff's cross-motion.
We need not repeat the history of the 1988 amendments of our no-fault legislation or the underlying considerations motivating the Legislature's adoption of the verbal threshold option. These are matters we discussed at length in Emmer v. Merin, 233 N.J. Super. 568, 572-574, 559 A.2d 845 (App.Div.), certif. denied, 118 N.J. 181, 570 A.2d 950 (1989), and Oswin v. Shaw, 250 N.J. Super. 461, 595 A.2d 522 (App.Div.), certif. granted, 127 N.J. 552, 606 A.2d 365 (1991). Suffice it to say that the basis of the legislative compromise on the verbal threshold issue was the intent to lower insurance premiums for those insureds willing to forego a dollar threshold, thereby conditioning their right to recover non-economic damages on meeting a verbal threshold. Oswin at 464, 595 A.2d 522. The verbal threshold option formulated by L. 1988, c. 119, § 6, codified as N.J.S.A. 39:6A-8a, provides as follows:
Every owner, registrant, operator or occupant of an automobile to which section 4 of P.L. 1972, c. 70 (C.39:6A-4), personal injury protection coverage, regardless of fault, applies, and every person or organization legally responsible for his acts or omissions, is hereby exempted from tort liability for noneconomic loss to a person who is subject to this subsection and who is either a person who is required to maintain the coverage mandated by this act, or is a person who has a right to receive benefits under section 4 of P.L. 1972, c. 70 (C.39:6A-4), as a result of bodily injury, arising out of the ownership, operation, maintenance or use of such automobile in this State, unless that person has sustained a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent *207 nature which prevents the injured person from performing substantially all of the material acts which constitute that person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment ...
The verbal threshold option includes, therefore, nine separate definitions of an injury sufficiently severe so as to relieve an injured person from his contractual waiver of the right to sue for non-economic damages. Some of these, such as death, dismemberment, fracture, and loss of a fetus, are not readily subject to genuine dispute. That is, the causal relationship of these injuries to the accident may be disputed, but the existence of the physical condition itself ordinarily is not. The problem, exemplified by this case, arises because of the interpretive range of other definitions of severity, particularly the last three, which include "permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute the person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment...."
In short, each of these categories may encompass serious soft tissue injuries. The rub is to determine, in each case, whether the particular soft tissue injury suffered is sufficiently severe to have "a serious impact on the plaintiff and her life," Oswin at 470, 595 A.2d 522, and hence, of sufficient consequence to meet one of the definitional tests of the statute. As is typical with soft tissue injuries, forensic witnesses, depending on their orientation, may take very different views of the same trauma, and it may also be that the determination will depend in significant part on the credibility and sincerity of the lay witnesses, including, of course, the injured person. The question then is how and when and by whom the determination should be made.
*208 If the proofs produced by full and complete pretrial discovery make it clear beyond a genuine dispute of material fact that plaintiff's injuries have failed to meet one of the threshold tests, then obviously pretrial disposition by way of grant of a defense motion to dismiss the complaint is appropriate. That was the situation before this court in Oswin, in which we affirmed a summary judgment dismissing the complaint because we were satisfied that as a matter of law, the injuries there alleged were not sufficiently serious within the intent of N.J.S.A. 39:6A-8a "to carry plaintiff across the threshold established by the Legislature." Id. at 472, 595 A.2d 522.[1]
The pretrial proofs will not, however, always be subject to a summary judgment disposition by which the trial judge will be able to evaluate the seriousness of the injury in statutory terms as a matter of law. We believe, moreover, that this is just such a case. Here, plaintiff's expert found an objectively determined substantial limitation of motion; the defense expert found none. The defense expert saw no substantial impact on plaintiff's life produced by his injuries. If, however, plaintiff and his physician were believed and the fact-finder were to conclude that plaintiff did have to give up athletics and that his ability to function as a college student was significantly impaired, a conclusion that the threshold was met might be warranted.
The issue then is simply to determine who the fact-finder should be, judge or jury, and when the fact-finding should be made, before or during trial. We are aware that Oswin opted, in these circumstances, for a pretrial evidential hearing to be conducted by the judge. We disagree.
*209 We start with the proposition that the meeting of the verbal threshold is, at least for purposes of defining plaintiff's burden of proof, one of the elements of the common-law cause of action based on automobile negligence. See, e.g., Montag v. Bergen Bluestone Co., 145 N.J. Super. 140, 366 A.2d 1361 (Law.Div. 1976), holding that while failure to meet the threshold is a matter for the defense to plead, proof that the threshold has been met is the plaintiff's burden. We are persuaded that this element of the cause of action, if in dispute, should be treated like any other disputed element of any other cause of action, namely, that plaintiff must be accorded the opportunity at trial to prove it to the satisfaction of the finder of fact. Thus, as we said in Hill v. Cochran, 175 N.J. Super. 542, 547, 420 A.2d 1038 (App.Div. 1980), in which we distinguished for proof purposes between the monetary threshold and the permanency threshold of the former version of the statute:
If, however, the judge should determine that there is a legitimate factual dispute, then the ensuing procedure depends entirely on which of the two standards is in issue. If the factual question relates to the monetary standard, the judge himself is obliged to perform the factfinding function on a pretrial basis, placing the burden of proof on the plaintiff. If, however, permanency is in dispute, that issue must be determined at trial by the ultimate finder of fact, whether judge or jury, and if jury, ordinarily on special interrogatories.
We indicated in Fitzgerald v. Wright, supra, [155 N.J. Super. 494, 382 A.2d 1162 (App.Div. 1978)] the basis for this distinction. Since the meeting of the threshold is an element of the cause of action, it should be subject to the same procedural rules which govern the proof and determination of any other elemental fact of any other cause of action. There is no conceptual reason why the permanency threshold question should not be subject to these rules. There is, furthermore, persuasive practical reason for not deviating from the usual procedural rules where permanency is fairly disputed since a pretrial judicial factfinding would not only deprive plaintiff of a jury determination on an element of his cause of action but would also, should he prevail at the pretrial hearing, impose upon him the onerous financial and logistical burden of producing his medical experts twice, first at the pretrial hearing and then again at trial.
There is, however, good reason, as we indicated in Fitzgerald, to require the exceptional technique of pretrial judicial determination where the dispute is as to the monetary standard. First, these disputes are considerably less complex than are permanency disputes and are customarily susceptible to determination on the basis of documentary proofs. More significantly, however, the judicial pretrial factfinding is virtually compelled by that provision of the no-fault law, *210 N.J.S.A. 39:6A-12, which renders inadmissible in evidence amounts collectible or paid for medical services under that law. Since this evidence, which is essential to determine the threshold issue, is intended by the Legislature to be withheld from the jury for purposes of its liability and damages verdicts, we concluded in Fitzgerald that considerations of public policy, common sense and practicality dictate that a jury not receive this evidence for purposes of making the threshold determination either. Thus, in order to avoid the necessity of impaneling a separate jury for this issue, it follows that the judge must make the determination himself. Since he must, it serves all interests that he do so as early in the course of the litigation as possible. Our point, of course, is that this judicial factfinding with respect to the monetary threshold is peculiar to that issue alone. The judicial function in respect of the permanency threshold is limited to determining whether a genuine factual issue exists. If it does, the jury or, in a nonjury trial, the judge, must be the ultimate arbiter.
We continue to adhere to this reasoning, pointing out again the need to construe the no-fault statute in light of the primary legislative purpose of reducing personal injury automobile accident litigation in order to relieve court congestion and the "spiraling costs" of automobile insurance. Oswin, 250 N.J. Super. at 463, 595 A.2d 522. Obviously a pretrial evidential hearing on a disputed threshold question would be contrary to both of these desiderata and generally counterproductive. In all those cases in which the evidential hearing would produce a finding in plaintiff's favor, medical experts on both sides would have had to have been produced twice, substantially adding to litigation costs for both sides. Moreover the preliminary evidential hearing would contribute to the further congestion of the courts by reason of duplicative scheduling and trial needs.
As we read Oswin, it relied in large measure in reaching its contrary conclusion on Governor Kean's Reconsideration and Recommendation Statement which preceded the adoption of the verbal threshold compromise effected by the 1988 revision of the no-fault law. In pertinent part, the Statement reads as follows:
That compromise [proposed by the Governor] is to make the verbal threshold the basic liability coverage in every automobile insurance policy the law of the land in New Jersey. At the same time, individual insureds will be permitted to opt for a monetary threshold, at a higher cost, if they so choose. I recommend adoption of a zero dollar threshold option. In effect, the zero dollar threshold will allow individuals to opt into a pure fault liability system, a choice which will *211 be reflected in their higher premiums. The purpose of the zero dollar option is to remove the incentive to inflate medical bills  thereby placing an unnecessary burden on PIP coverage  in order to reach some specified monetary threshold. I believe the citizens of New Jersey recognize that when their medical bills are being promptly paid, without regard to fault, they lose next to nothing in relinquishing the ability to sue for pain and suffering for nonserious injuries only and, consequently, the vast majority will maintain the base verbal threshold. The verbal threshold contained in this recommendation is patterned after that in force in New York State (See New York Insurance Law §§ 5102, 5104). This verbal threshold specifically sets forth those injuries which will be considered "serious." Lawsuits for non-economic injuries, such as pain and suffering, will be allowed for these enumerated "serious injuries" only. It is my intention that the term "serious injury," as defined in this recommendation, shall be construed in a manner that is consistent with the New York Court of Appeals' decision in Licari v. Elliott, 57 N.Y.2d 230, 455 N.Y.S.2d 570, 441 N.E.2d 1088 (1982). Whether a plaintiff has sustained a "serious injury" must be decided by the court, and not the jury. Otherwise, the bill's essential purpose of closing the courthouse door to all lawsuits except those involving bona fide serious injuries will be diluted and the bill's effectiveness will be greatly diminished. In addition, strict construction of the verbal threshold is essential; any judicial relaxation of this plain language will impede the intent of maintaining the substantial benefits of no-fault at an affordable price. [Oswin, supra, 250 N.J. Super. at 464-465, 595 A.2d 522. (Governor's Reconsideration and Recommendation Statement to Senate, No. 2637-L. 1988, c. 119, see N.J.S.A. 17:28-1.4.)]
We are well aware that in this Statement the Governor expressed the view that the verbal threshold should be decided by the judge, not the jury. We are also aware that although a statement by the executive branch accompanying legislation is not constructionally dispositive, it is nevertheless entitled to deferential consideration as evidential of legislative intent. Fields v. Hoffman, 105 N.J. 262, 270, 520 A.2d 751 (1987); Schulman v. O'Reilly-Lando, 226 N.J. Super. 626, 630, 545 A.2d 241 (App.Div. 1988); Skeer v. EMK Motors, Inc., 187 N.J. Super. 465, 472, 455 A.2d 508 (App.Div. 1982); 2A Sutherland, Statutory Construction, § 48.05 at 330 (5th ed. 1992). While we are therefore loathe to reject the Governor's Statement in this regard, we conclude we must do so because of its internal inconsistency, which forces at least some part of the Statement to be rejected.
*212 In short, the Governor's Statement makes clear that the verbal threshold scheme he endorses is that of New York. He states, in no uncertain terms, that "[t]he verbal threshold contained in this recommendation is patterned after that in force in New York State," and goes on to emphasize that it is to be construed consistently with Licari v. Elliott, 57 N.Y.2d 230, 441 N.E.2d 1088, 455 N.Y.S.2d 570 (1982). But Licari does not commit the disputed threshold question to the court in preference to the jury. What Licari holds, to the contrary, is that the judge must determine whether there is a sufficient dispute respecting the threshold question to warrant a jury's finding in plaintiff's favor. And if there is, the action continues, and the dispute is resolved by the jury. 455 N.Y.S.2d at 574, 441 N.E.2d at 1091-92. In sum, the New York courts have consistently construed the verbal threshold in summary judgment terms, that is, where a genuine dispute is demonstrated respecting the plaintiff's meeting of the threshold, the dispute is reserved for trial by jury, particularly where resolution of the dispute requires credibility determinations by the trier of fact. See, e.g., Lopez v. Senatore, 65 N.Y.2d 1017, 484 N.E.2d 130, 494 N.Y.S.2d 101 (1985); Morsellino v. Frankel, 161 A.D.2d 748, 556 N.Y.S.2d 103 (1990); Swenning v. Wankel, 140 A.D.2d 428, 528 N.Y.S.2d 130 (1988).
It is a well-accepted canon of statutory construction that a legislative body "in drawing upon the statutory law of another State, probably intended to accept also the interpretive gloss it then had in that jurisdiction." Todd Shipyards Corp. v. Township of Weehawken, 45 N.J. 336, 343, 212 A.2d 364 (1965). See also Van Horn v. William Blanchard Co., 88 N.J. 91, 97, 438 A.2d 552 (1981). Here, the Governor's Statement indicates not merely an implicit acceptance of New York's interpretive gloss, but rather an express acceptance thereof. We think it unlikely, therefore, that the Statement intended to urge rejection of the basic New York procedural scheme. We are consequently persuaded that the inconsistency in the Statement may be more apparent than real. It can be harmonized by reading the *213 reference to court determination as a reference to the first tier of decision in which the judge must decide as a matter of law whether a jury could find the threshold to have been met. If it could, the matter must proceed to trial with the jury deciding the threshold elements of the cause of action.[2]
We note that our reading of the statute is consistent with the view of other verbal threshold states, none of which, according to our research, eliminates jury determination of genuinely contested threshold issues. See Mighty Nat'l Exterminators, Inc. v. Powers, 434 So.2d 361 (Fla. Dist. Ct. App. 1983); Hansen v. White, 190 Ga. App. 596, 379 S.E.2d 536, cert. denied, 190 Ga. App. 897 (1989); Parker v. Nakaoka, 68 Haw. 557, 722 P.2d 1028 (1986); Stang v. Caragianis, 243 Kan. 249, 757 P.2d 279 (1988); Phelps v. MacIntyre, 397 Mass. 459, 491 N.E.2d 1067 (1986). See also Lori A. Dvorak, Note, No-Fault Automobile Insurance Law: Speaking Out on New Jersey's Verbal Threshold, 16 Seton Hall Legis.J., 716, 735-739 (1992).
For the reasons herein stated, we affirm the order denying defendant's motion for summary judgment, but reverse the summary judgment entered in favor of plaintiff, and remand to the trial court for further proceedings consistent herewith.
NOTES
[1] We concur fully in the broad summary judgment standard employed by Oswin in determining whether the injuries, as a matter of law, are not sufficiently serious, within the statutory perception, to warrant continuation of the action.
[2] Although the question is not directly before us, we would assume that this issue would be submitted to the jury by special interrogatory following a charge by the judge explaining the relevant threshold options and the nature of the proofs necessary to sustain them.