270 N.J. Super. 200 (1994)
636 A.2d 1071
JOSEPH CINEAS AND MARIA CINEAS, PLAINTIFFS-APPELLANTS,
v.
LARRY MAMMONE, WARNER INSURANCE SYSTEMS, MATERIAL DAMAGE ADJUSTMENT COMPANY, NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 5, 1994.
Decided January 31, 1994.
*202 Before SHEBELL, LONG and LANDAU, JJ.
Freeman & Bass, attorneys for appellant (Douglas D. Burgess, on the brief).
Robert A. Auerbach, attorney for respondent (Randi S. Greenberg, of counsel and on the brief).
The opinion of the court was delivered by SHEBELL, P.J.A.D.
This is another of the numerous appeals we have received involving the verbal threshold. It does, however, have an additional twist because plaintiff was twice subjected to the same motion for summary judgment before two different judges.
Plaintiff, Joseph Cineas, was involved in an automobile accident with defendant, Larry Mammone, on November 24, 1989. On December 21, 1990, plaintiff and his wife, Maria, per quod, filed a complaint against defendant and others alleging injuries and damages as a result of defendant's negligence. Defendant, Larry Mammone, filed an answer to plaintiffs' complaint on or about April 30, 1991.
The matter was arbitrated on May 7, 1992, and defendant, Mammone, was determined to be 100% at fault. The arbitrator awarded $5,500 to plaintiff, Joseph Cineas. Pursuant to R. 4:21A-6(b)(1) *203 and 4:21A-6(c), on May 8, 1992, plaintiff filed a request for a trial de novo.
Defendant filed a motion for summary judgment, dated August 4, 1992, asserting that plaintiff failed to satisfy the verbal threshold. Defendant's motion was denied by the Honorable William H. Walls, J.S.C. The matter was given a trial date of February 10, 1993.
On February 10, 1993, defendant orally renewed his motion for summary judgment without the submission of additional papers or the taking of any testimony. The motion was granted by the trial judge. He signed an order granting summary judgment on February 24, 1993. Although this order states that a "R. 8 Hearing" was held, defendant notes that no such hearing was actually held, as "[t]he only proceeding that took place prior to the granting of the motion was the oral argument of counsel."
Plaintiff, Joseph Cineas, age 41, was stopped at a stop sign at the intersection of Walnut and Broad Streets in Summit when his vehicle was struck from behind by the Mammone vehicle. A police officer witnessed the accident. Although plaintiff did not complain of any injuries at the scene of the accident, he drove himself to Overlook Hospital immediately following the incident. Plaintiff was not examined by a physician. He says he did not stay for treatment because they made him wait too long.
Four days later, plaintiff went to see his own physician, Dr. Lala, a general practitioner, who advised plaintiff to see another doctor. Plaintiff's lawyer recommended Dr. Roberts, an orthopedist. Plaintiff's first visit was five days after the accident. Plaintiff continued to go to Dr. Roberts twice per week for approximately five to six months. He complained to Dr. Roberts of pain in his chest, neck, head, and lower back. Dr. Roberts' report, dated July 15, 1990, indicated that plaintiff had "acute cervical spine sprain with traumatic myositis, acute lumbosacral spine sprain with traumatic myositis, and post-traumatic headaches." It also indicated that plaintiff had pain radiating to both trapezius muscles and that the cervical spinal muscles were in severe spasm. *204 Plaintiff's treatment consisted of Motrin for the pain, a cervical collar, motion exercises, and hydrocollator therapy. Plaintiff saw Dr. Roberts approximately fifty-five times between December 5, 1989, and June 8, 1990. An updated report from Dr. Roberts, dated August 31, 1992, stated that plaintiff's "injuries have resulted in permanent disability" and that "[h]is prognosis remains guarded."
X-rays, taken on May 30, 1990, showed normal stature of the vertebral bodies, but indicated a "radiolucent line" that possibly represented "spondylolysis." A CAT scan was recommended by the radiologist, but apparently was not carried out.
Plaintiff sought psychotherapy on December 5, 1989, from Dr. Latimer, a Board certified psychiatrist and neurologist. Plaintiff was treated by Dr. Latimer on seven occasions between December 5, 1989, and February 28, 1990. Dr. Latimer's report, dated March 1, 1990, listed plaintiff's diagnosis as whiplash injury to the neck and back, post-traumatic depression and anxiety reaction, and contusions of the chest and multiple sprains related to the automobile accident of November 24, 1989. In his December 8, 1989 report, Dr. Latimer listed the following objective signs of anxiety and depression: restlessness, tremors of the hands, tremors of the lips, increased muscle tonus, depressed mood, decreased energy level, and fatigue. Dr. Latimer concluded that plaintiff's permanency and degree of disability were severe. On February 28, 1990, plaintiff reached a "maximum therapeutic plateau" and was discharged.
In addition, plaintiff was treated by Dr. Gautam Sehgal, a neurologist, on approximately fourteen occasions between December 5, 1989, and April 5, 1990. Dr. Gautam Sehgal's report indicated evidence of "diffuse paralumbar muscle spasm, moderate hardness of the paralumbar muscles with restricted range of motion." He found that plaintiff's cervical spine showed "suboccipital tenderness and multiple areas of tenderness along the cervical spine with restriction of range of motion in the flexion extension." Plaintiff's lumbosacral spine showed evidence of "diffuse *205 paralumbar muscle spasm, moderate hardness of the paralumbar muscles with restricted range of motion." Dr. Sehgal's initial diagnosis listed plaintiff's injuries as the following:
(1) Posttraumatic acute cervical flexion extension injury with resulting traumatic fibromyositis, and restricted range of motion.
(2) Posttraumatic acute flexion extension injury of the lumbosacral spine with resulting traumatic fibromyositis, and restricted range of motion.
(3) Soft tissue injuries to these areas.
(4) Posttraumatic muscle contraction cephalgia.
(5) Posttraumatic vestibulopathy.
(6) Posttraumatic chest wall contusion, rule out cardiac injury.
(7) Posttraumatic stress disorder.
The neurologist advised plaintiff to limit his work because of "the serious nature of this injury."
Plaintiff was also treated by Dr. Saroj Sehgal, an internist. He submitted two reports, one dated March 30, 1990, and the other dated August 31, 1992. These reports corroborated the diagnosis of Dr. Gautam Sehgal.
At defendant's request, plaintiff was examined by Dr. Canario, Director of Orthopaedics at Newark Beth Israel Medical Center. In his report, dated November 16, 1990, Dr. Canario stated that plaintiff had "full range of motion of the cervical spine in flexion, extension, lateral bending and lateral rotation." Dr. Canario also stated that plaintiff had "full range of motion of the lumbarsacral spine in all planes of flexion, extension, lateral bending and lateral rotation." Dr. Canario opined that plaintiff may have had a whiplash injury to his neck and back after the accident, but these injuries are "certainly resolved." He added that plaintiff has reached the "full, unrestricted motion in both the cervical and lumbarsacral spine." Dr. Canario found no evidence of radioculopathy and concluded that plaintiff will have "only minimal residual of a mild soft tissue injury."
Also at defendant's request, plaintiff was examined by Dr. Jeffrey Brown, a neuropsychiatrist. Dr. Brown opined that plaintiff "does not now nor never appeared to be suffering from post-traumatic stress disorder." Dr. Brown also stated that plaintiff *206 "had virtually all of the symptomatology he complained about since the 1989 accident after the 1984 one." In his diagnosis involving plaintiff's disability and permanency, Dr. Brown wrote: "Under the totality of these circumstances, this examiner concludes that his chronic pain symptomatology as of yet has not been completely treated. In this situation, one cannot conclude with reasonable medical probability that the chronic pain is permanent, let alone that it has caused any permanent functional disability."
On August 18, 1992, plaintiff, Joseph Cineas, was deposed. Plaintiff testified that he did not miss any work because of the accident as the accident occurred on Friday and he returned to work on Monday. He stated that even though he didn't miss any work, he returned in great pain because he had only been employed by Overlook Hospital as a housekeeper for three months and he was afraid of losing his job. However, plaintiff attested that he no longer worked any overtime as a result of the accident. Plaintiff testified that his intimate relationship with his wife had changed since the accident in that he cannot have sex as often. In addition, plaintiff stated that he can no longer help his wife with household chores, he cannot paint the house, and he cannot perform any home repairs.
Judge Walls denied defendant's initial motion for summary judgment based upon his determination that plaintiff's doctors found spasm which could be considered an objective sign. When the summary judgment motion was brought up again by defendant on the scheduled day of trial, the judge stated:
In  now the case is before me getting ready for trial and I checked with Judge Weiss who said, as I'd done one time in the past, where Judge Weiss had made the decision and I felt that at the time of trial that I had more access to more information than Judge Weiss. I asked Judge Weiss if he would be upset if I disagreed with him and in a sense reversed him, he said he had no problem with that and I'm sure Judge Walls wouldn't have any problem with it either. My feeling is that in an Oswin type situation, I think it's, speaking as an ex-plaintiff's lawyer that it's an unfair cri  criteria that I have to look at the light  at the evidence in the light most favorable to the resisting parties, in this case the Plaintiff, in an Oswin type situation. I'm not so sure that that's the criteria that should be utilized. But even if it is utilized I think the whole program is  is defeated because of the simple ruberk [sic] of being able to say I found a spasm *207 and that carries us through the rest of the day. There  I think the burden of proof is on the Plaintiff to prove an objective sign. My understanding is that not only is the only objective sign they have is the spasm but there other cri  other modalities that can be used to determine objectivity, there's the thermogram, a CAT, an MRI, electrographic studies for nerve conduction, etc. And I don't think that any more you can just get away with spasm, because if you could word would get around in the community, medical community so fast, as it did in the Oswin case where the treating doctor I think parroted the language of the statute.
Thus, the second judge, contrary to the holding of Judge Walls, on the identical showing granted defendant's motion for summary judgment. The trial judge stated that he didn't think plaintiff had "sustained the burden of proof in this case."
On appeal, plaintiff argues that it was an error for one judge to grant defendant's motion for summary judgment after another judge had already denied that motion. Plaintiff asserts that there were no exceptional circumstances to warrant a judge of coordinate jurisdiction to vacate the order of another judge. Further, plaintiff argues that the trial judge should not have reconsidered a motion for summary judgement at a R. 8 hearing, as this practice was rejected in Oswin v. Shaw, 129 N.J. 290, 609 A.2d 415 (1992). Finally, plaintiff urges that he submitted objective credible evidence that satisfied the requirements of the verbal threshold pursuant to N.J.S.A. 39:6A-8.
We have held that "the trial court has the inherent power, to be exercised in its sound discretion, to review, revise, reconsider and modify its interlocutory orders at any time prior to the entry of final judgment." Johnson v. Cyklop Strapping Corp., 220 N.J. Super. 250, 257, 531 A.2d 1078 (App.Div. 1987), certif. denied, 110 N.J. 196, 540 A.2d 189 (1988). An order denying a motion for summary judgment is an interlocutory order. See R. 4:50-1(f). In the present case, Judge Walls' denial of defendant's motion for summary judgment was interlocutory. Thus, his denial was subject to the trial court's inherent power to review, revise, reconsider, and modify its order. See Johnson, supra, 220 N.J. Super. at 257, 531 A.2d 1078. However, the authorities set forth in Clarkson v. Kelly, 49 N.J. Super. 10, 138 A.2d 747 (App. Div. 1958), reflecting that judges should not vacate orders of *208 judges of co-ordinate jurisdiction unless there are exceptional circumstances are very much in point in a case such as this. Of course, Clarkson involved the very different issue of whether a second judge of co-equal jurisdiction had the authority to hear and vacate a prior judge's order granting a party's application to vacate without prejudice. Id. at 15, 138 A.2d 747.
Nonetheless, we must express our reservation about a judge entertaining a second motion for dismissal of an action for personal injuries on the grounds of failure to meet the verbal threshold, N.J.S.A. 39:6A-8, unless there has been a material change in the facts or available evidence. The fact that the second judge may have decided the first motion differently is insufficient reason. There must be a clear showing of fundamental error in law or the submission of new factual material.
Prior to the granting of defendant's second motion for summary judgment, the only new proceeding that took place was the oral argument of the attorneys for both plaintiff and defendant. The facts and evidence were unchanged. We find no satisfactory explanation for re-visiting the summary judgment motion. We choose, however, not to reverse on this ground as we have reviewed the substance of the motion and are convinced that Judge Walls was correct in denying the motion.
The New Jersey Supreme Court has determined that "the correct procedure for verbal threshold cases follows the summary-judgment model  that is, the court decides whether the injury alleged would, if proven, meet the requirements of one of the verbal threshold categories, and the jury decides factual disputes about the nature and extent of the plaintiff's injuries." Oswin v. Shaw, 129 N.J. 290, 294, 609 A.2d 415 (1992). Our Supreme Court devised a two-part test for determining a verbal threshold question: "(1) whether under any view of the plaintiff's injuries they can be said to fall within at least one of the nine categories that New Jersey's statute specifies, and (2) if so, whether the evidence before the court on a motion for summary judgment demonstrates a material dispute of fact regarding the nature and extent of *209 plaintiff's injuries." Id. at 307, 609 A.2d 415. If the trial court decides that the medical reports and other evidence submitted regarding plaintiff's injuries do not, as a matter of law, "carry the plaintiff's case across the verbal threshold, then the defendant will prevail on the motion." Ibid. If the plaintiff's medical proofs survive this initial test, and the court finds a legitimate, factual dispute over the nature and extent of the injuries, "then resolution of that dispute is of course for the jury." Ibid.
Plaintiff has elected the less expensive automobile insurance coverage which limits his right to recover for non-economic loss, N.J.S.A. 39:6A-8a; commonly referred to as the "verbal threshold." This section provides:
Every owner, registrant, operator or occupant of an automobile to which section four of P.L. 1972, c. 70 (C. 39:6A-4), personal injury protection coverage, regardless of fault, applies, and every person or organization legally responsible for his acts or omissions, is hereby exempted from tort liability for non-economic loss to a person who is subject to the subsection and who is either a person who is required to maintain the coverage mandated by this act, or is a person who has a right to receive benefits under section 4 of P.L. 1972, c. 70 (C. 39:6A-4), as a result of bodily injury, arising out of ownership, operation, maintenance or use of such automobile in this State, unless that person has sustained a personal injury that results in death; dismemberment; significant disfigurement; a fracture; loss of fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute that person's usual and customary daily activities for not less than 90 days during 180 days immediately following the occurrence of the injury or impairment. [N.J.S.A. 39:6A-8a.]
Plaintiff argues that he has satisfied the verbal threshold requirement of the statute by demonstrating a "significant limitation of use of a body function or system [category eight]." N.J.S.A. 39:6A-8a.
New Jersey's no-fault statute was based on New York's, therefore, the New Jersey Supreme Court used the standards for evaluating a plaintiff's injuries set forth in Licari v. Elliott, 57 N.Y.2d 230, 455 N.Y.S.2d 570, 441 N.E.2d 1088 (1992). Oswin, supra, 129 N.J. at 315, 609 A.2d 415. In fact, the New Jersey Supreme Court adopted some of its definitions of the fundamental *210 terms from Licari. These definitions also apply to the type of injuries that plaintiff, in the case at bar, is alleging.
The word "significant," as in category eight of the statute, "`should be construed to mean something more than a minor limitation of use.'" Oswin, supra, 129 N.J. at 316, 609 A.2d 415 (quoting Licari, supra, 455 N.Y.S.2d 570, 441 N.E.2d at 1091). In Oswin, the doctor's report showed that plaintiff had degrees of limitation in six different types of movement. Oswin, supra, 129 N.J. at 320, 609 A.2d 415. Despite these findings, deemed "admirably specific" by the Court, it held that "range of motion tests are not enough." Ibid.
In the instant matter, plaintiff also provided medical reports that show limitations of the use of a body function or system as demonstrated by range of motion tests. Dr. Roberts' report of August 31, 1992, stated that plaintiff has "significant limitations in range of motion of the lumbosacral spine, with flexion lacking 15 degrees, extension lacking 15 degrees, and right and left lateral movements lacking 10 degrees." Dr. Gautam Sehgal's report, dated August 16, 1992, stated that plaintiff had restriction in range of motion of the cervical spine in flexion and extension. The report related that "[h]ead flexion 30 degrees (normal 60 degrees); extension 25 degrees (normal 50 degrees); bending to the right 15 degrees (normal 40 degrees); and bending to the left 20 degrees (normal 40 degrees)...." Dr. Saroj Sehgal's report indicated "decreased range of motion in all planes." Dr. Gautam Sehgal added that his examination of plaintiff's lumbosacral spine also showed restricted range of motion: "[s]traight leg raising was positive at 30 degrees ... [t]runk flexion 45 degrees (normal 90 degrees); extension 15 degrees (normal 30 degrees); bending to the right 10 degrees (normal 20 degrees); and bending to the left 10 degrees (normal 20 degrees)...."
Oswin held that "[b]ecause range-of-motion tests are based only on patients' pain responses, they ordinarily will not suffice unless the restricted mobility is verified by physical examination and observation." Oswin, supra, 129 N.J. at 320, 609 A.2d 415. Here, *211 plaintiff's range of motion tests were verified by physical examination and observation. Even reports from defense counsel's physician verify that plaintiff had restricted range of motion. The report of Dr. Brown, dated September 21, 1992, noted that plaintiff was able to walk without difficulty on his toes, but that he was "completely unable to walk on his heels."
Even if the evidence of plaintiff's restricted range of motion is of itself insufficient to satisfy the requirements of verbal threshold, there is other objective evidence in the record. Plaintiff's principal treating physician, Dr. Roberts, stated in his report dated July 15, 1990, that plaintiff's cervical spinal muscles "were in severe spasm" and that his lumbosacral spinal muscles "were in spasm." (Emphasis added). Dr. Saroj Sehgal's report declares that "[t]here was evidence of cervical spasm...." Oswin held that "even though soft-tissue injuries are not apparent in x-rays, they often manifest themselves in objective form, including swelling, discoloration, and spasm." Oswin, supra, 129 N.J. at 320, 609 A.2d 415 (emphasis added). Thus, the evidence of spasm helps satisfy the standards for "verbal threshold" set by Oswin.
Additionally, "[a] plaintiff must show a nexus between the injury and the disability. The injury itself does not fulfill the statutory requirement, rather the resultant loss and disability are the key." Id. at 318, 609 A.2d 415. Therefore, the Court in Oswin proffered that a trial court must look to see the impact that the injury has made on the plaintiff's life. Ibid. Our New Jersey Supreme Court adopted our statement in Oswin that "a plaintiff must show that `the injury had a serious impact on the plaintiff and her life.'" Ibid. (quoting Oswin v. Shaw, 250 N.J. Super. 461, 470, 595 A.2d 522 (App.Div. 1991)).
Plaintiff testified at his deposition that he cannot have sexual relations with his wife as frequently as before the accident because of his back injuries. He also claimed that he can no longer help his wife with the household chores, nor can he paint or repair the house. Additionally, plaintiff attested that before the accident he worked approximately forty-five hours per week which resulted in *212 overtime pay, but now he can only work "normal" work hours of thirty-seven and one-half hours per week. Plaintiff's doctors concluded that the injury was permanent. Dr. Roberts' report stated that "[plaintiff's] injuries have resulted in permanent disability." Dr. Latimer opined that plaintiff's permanency and degree of disability were "severe." Thus, it appears that the accident has made a significant impact on plaintiff's life and, as we documented earlier, plaintiff has satisfied the requirements of the verbal threshold statute under Oswin as it pertains to objective evidence of limitation of motion.
The record in this case contains conflicting medical reports. Plaintiff was examined and treated by four doctors: Dr. Roberts, an orthopedic specialist; Dr. Latimer, a psychiatrist and neurologist; Dr. Gautam Sehgal, a neurologist; and Dr. Saroj Sehgal, an internist. Pursuant to defense counsel's request, plaintiff was examined by Dr. Canario and Dr. Brown and these reports are also part of the record. The reports of Dr. Canario and Dr. Brown contradict the reports from plaintiff's treating physicians. Even though there are conflicting medical reports offered by defendant, where there is a disputed issue as to whether plaintiff has met the verbal threshold, the plaintiff must be afforded the opportunity "at trial to prove it to the satisfaction of the finder of fact." Brown v. Puente, 257 N.J. Super. 203, 209, 608 A.2d 377 (App.Div. 1992).
Similar to the case at bar, in Brown, there was a dispute as to medical findings. Id. at 208, 608 A.2d 377. The plaintiff's expert found an "objectively determined substantial limitation of motion" and the defense expert found none. Ibid. The defense expert concluded that there was no substantial impact on plaintiff's life as a result of his injuries. Ibid. The plaintiff and his physician related how plaintiff had to give up athletics and that his life as a college student was significantly impaired. Ibid. The Brown court held that there was a disputed issue as to whether the plaintiff had met "verbal threshold" under the statute. Therefore, we affirmed the order denying defendant's motion for summary *213 judgment. Brown emphasizes that "pretrial proofs will not, however, always be subject to a summary judgment disposition by which the trial judge will be able to evaluate the seriousness of the injury in statutory terms as a matter of law." Ibid. Because of the contradictory medical evidence in the instant matter, it is not a case that can be disposed of by summary judgment.
The medical reports from plaintiff's treating doctors provided objective credible evidence sufficient to meet the requirements of the verbal threshold statute. It can be found that plaintiff's injuries qualify under "category eight" ("significant limitation of use of a body function or system"). Plaintiff's medical reports showed decreased range of motion of the lumbosacral spine and the cervical spine. There was report of objective evidence of spasm and opinion that plaintiff's injuries resulted in significant and perhaps permanent disability.
Reversed and remanded.