272 N.J. Super. 225 (1994)
639 A.2d 738
RICKY OWENS, PLAINTIFF-APPELLANT,
v.
JACK KESSLER, GMAC LEASING AND TIM WHITE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 15, 1994.
Decided April 5, 1994.
*226 Before Judges PRESSLER, BROCHIN and KLEINER.
Richard Wildstein argued the cause for appellant (Goldstein, Ballen, O'Rourke & Wildstein, attorneys; Mr. Wildstein on the brief and the reply brief).
*227 Robert A. Giannone argued the cause for respondent Jack Kessler (Donington, Karcher, Salmond, Ronan & Rainone, attorneys; Mr. Giannone on the brief).
Paul J. Curreri argued the cause for respondent Tim White (Dwyer, Connell & Lisbone, attorneys; Mr. Curreri on the brief).
The opinion of the court was delivered by KLEINER, J.S.C. (temporarily assigned)
This is a verbal threshold case, N.J.S.A. 39:6A-8a, in which plaintiff Ricky Owens appeals from a summary judgment dismissing his claim for noneconomic damages resulting from an automobile collision on December 22, 1989. Plaintiff was a passenger in a motor vehicle operated by defendant Tim White which collided with a vehicle operated by defendant Jack Kessler.[1] Both defendants moved for summary judgment which was granted. We conclude that the motion judge failed to properly apply the summary-judgment model as mandated by the Supreme Court in Oswin v. Shaw, 129 N.J. 290, 294, 609 A.2d 415 (1992), and accordingly, we reverse.
On December 22, 1989, plaintiff was eighteen years old, unemployed, and had discontinued his high school education. While in school he had actively participated in organized sports including football, basketball and baseball. His interest in athletics as a recreational pursuit continued after leaving school until the date of his injury. He asserted that he had never experienced any prior injury and had been in excellent physical condition.
Plaintiff was initially examined in a hospital emergency room immediately following the accident. X-rays taken that day were negative, and plaintiff was released. He visited his treating physician, Dr. Mariamma Thomas, a diplomate of the American Board of Physical Medicine and Rehabilitation, on January 2, *228 1990, and thereafter on thirty-five other dates until he was released from active treatment on April 10, 1990.
Dr. Thomas' initial report comprehensively analyzed plaintiff's condition as of the date of initial diagnosis and as of the date of discharge. On plaintiff's initial examination, Dr. Thomas found spasm in both posterior muscle groups and trapezii in the cervical spine. Spasm was also noted in the dorsal spine and paravertebral muscles. Additionally, "[t]here was spasm and tenderness with tender fibrositic nodules." The balance of the doctor's preliminary diagnosis focused upon range of motion measurements and plaintiff's subjective complaints. Plaintiff was advised to take analgesics and anti-inflammatory agents for pain and was treated with physical therapy consisting of ice, heat, massage, ultrasound, electrical stimulation and traction. He was also advised to commence a home exercise program and to wear a soft cervical collar.
On April 10, 1990, the spasm which was evident originally in plaintiff's paracervical and paravertebral muscles was still evident. Based upon a range of motion comparison between the January 2, 1990 and the final visit, the doctor concluded that the patient's condition had improved. The doctor specifically noted:
Though there has been some improvement and relief of pain, this patient's prognosis for complete recovery is poor. In all medical probability, this patient will continue to suffer the effects of the significant and permanent consequential limitation of the musculo skeletal system function involving the cervical spine, dorsal spine, and right shoulder. It is my opinion that within reasonable medical probability, it can be stated that his injuries are the result of the accident of 12-22-89. He is susceptible to painful relapses throughout his life, particularly at the time of stress. Due to significant permanent limitation and significant amount of pain, this patient had great difficulty in performing to any extent his usual daily activities, hobbies and work requirements without chronic discomfort and pain. The injuries of the cervical spine, dorsal spine, and right shoulder are permanent.
We note that plaintiff alleges he struck his head against the interior top of the vehicle during the collision and subsequently complained of headaches and dizziness. Dr. Thomas noted plaintiff had post-concussion syndrome, offered no treatment, but recommended that if the headaches persisted, plaintiff should see a neurologist. Plaintiff did not require neurologic treatment.
*229 On discharge from active medical treatment, plaintiff secured employment with Scaffolding, USA. However, that job involved heavy lifting and he certified that he was forced to leave that position. Since the summer of 1992, plaintiff has been employed by a furniture company and as a general laborer in a warehouse. Heavy lifting required by these jobs has caused him continued back pain. His certification states:
Although the condition of my neck has improved somewhat as a result of treatment with Dr. Thomas's office, and the neck pains come and go there has been no improvement in the condition of my mid-back area. In fact, the mid-back pain has gotten worse. During the periods I was doing physical work, the pain was constant. Now that I am not working, the pains come approximately three or four times a week. I currently take Tylenol, Advil or Doans pills for the pain.
On February 23, 1993, plaintiff was reevaluated by Dr. Thomas. Her report of that date indicates:
Cervical examination elicits complaints of pain to palpation of the bilateral C2-C7 paraspinal muscles. There is [sic] significant spasms of the paracervical muscles. Range of motion of the cervical spine showed flexion to be restricted 10 percent and all other movements to be restricted 20 percent. Lateral flexion and rotation to the left was restricted 20 percent.
Thoracic examination elicits complaint of pain to palpation of the bilateral upper trapezii and upper paravertebral muscles. There is some localized areas corresponding to trigger point zones which are tender. There is a complaint of pain to palpation of the bilateral T4-T8 paraspinal muscles. There is marked spasm of the upper paravertebral muscles and trapezii bilaterally. Range of motion of the dorsal spine showed flexion to be restricted 10 percent and all other movements to be restricted 15 percent. Examination of the right shoulder revealed significant tenderness on palpation. Range of motion was restricted 5 percent in all ranges and painful on abduction.
In granting summary judgment to defendants, the motion judge summarized the plaintiff's medical presentation:
1. Treating physician Thomas makes it very clear in her initial report that if the plaintiff was suffering from persistent [sic] headaches and radiculopathy, there should be an examination, treatment and report from a neurologist. Where is that neurologist in this case? Where are the MRIs? What type of pain medication is this plaintiff relying on? (He later says that he's relying on Tylenol or Advil, normal over-the-counter pain relief medication.) Next, Dr. Thomas' own basic neurological exam and testing are all normal. We look at the sensation, deep tendon reflexes, etc., even immediately following the accident, there is no finding of any difficulty there. Next, we look at our range of motion deficits. They continue to improve. As late as the 1993 exam they have improved significantly. The only indication that spasm in this case is on palpatation [sic] by the doctor, gives no *230 indication of it being involuntary or being of a constant nature. Reevaluation took place in 1993 three years following discharge. There has been no follow-up, no subsequent treatment, nothing, until we're faced with the decision whether or not this case qualifies to to [sic] go forward to the jury as a result of the verbal threshold. The doctor's report then uses the traditional statutory language but does not follow-up on her own recommendations requiring a neurologic examination.
Plaintiff's counsel urges us to look at the impact upon this man's life. Their reading of the medical report show objective findings although this court cannot find them. The argument is made that Mr. Owens left his job in construction and is now only a warehouse operator. At the time of the accident, this man was unemployed. Do we have any indication that he went back to a job in construction? Did he go out on disability? Did the doctor tell him not to work construction? There is nothing of an objective nature to permit a finding that these employment related problems are connected to this accident.
....
Defense counsel correctly points out that here, as in Oswin, the medicals are very similar. The doctor's reports parrot the statutory language "tenderness, spasm upon palpatation [sic], limited range of motion, effected ability to engage in athletics, difficulty in standing and sleeping." The Oswin court found all those insufficient just as we indicated earlier. Temporary transitory pain with insufficient "technical undefined trauma" do not qualify as objective medical findings. Unfounded, subjective complaints in range of motion limitation is [sic] not the key to a breach of verbal threshold.
The court, having concluded that plaintiff failed to pass the verbal threshold requirements by presenting objective credible evidence of injury, did not consider any allegation of the serious impact the injury had upon plaintiff's life.
The seminal case interpreting N.J.S.A. 39:6A-8a is Oswin v. Shaw, 129 N.J. 290, 609 A.2d 415 (1992). The Supreme Court specifically provided:
[T]he correct procedure for verbal-threshold cases follows the summary-judgment model  that is, the court decides whether the injury alleged would, if proven, meet the requirements of one of the verbal-threshold categories, and the jury decides factual disputes about the nature and extent of the plaintiff's injuries.
[Id. at 294, 609 A.2d 415.]
The Oswin Court articulated two standards for determining whether an injury meets the statutory threshold  one objective and the other partially subjective and partially objective. Oswin v. Shaw, supra, 129 N.J. at 318-19, 609 A.2d 415; Polk v. Daconceicao, 268 N.J. Super. 568, 575, 634 A.2d 135 (App.Div. *231 1993). Under the objective standard, the plaintiff must show a material factual dispute "by credible, objective medical evidence" establishing a serious injury that is not based solely on subjective complaints of pain. Oswin v. Shaw, supra, 129 N.J. at 314, 318-19, 609 A.2d 415; Polk v. Daconceicao, supra, 268 N.J. Super. at 575, 634 A.2d 135. Under the dual subjective-objective standard, the plaintiff must show that the injury has resulted in a disability having a "serious impact" on his or her life in addition to objectively showing causation attributable to the accident. Oswin v. Shaw, supra, 129 N.J. at 318-19, 609 A.2d 415; Polk v. Daconceicao, supra, 268 N.J. Super. at 575, 634 A.2d 135. "[P]laintiff must raise at least a factual question as to both criteria sufficient to warrant a favorable jury finding." Dabal v. Sodora, 260 N.J. Super. 397, 400, 616 A.2d 1297 (App.Div. 1992). As stated by the Oswin Court:
A plaintiff must show a nexus between the injury and the disability. The injury by itself does not fulfill the statutory requirement; rather, the resultant loss and disability are the key. As the Appellate Division stated in this case, a plaintiff must show that "the injury had a serious impact on the plaintiff and [his or] her life."
[Oswin v. Shaw, 129 N.J. at 318, 609 A.2d 415 (quoting Oswin v. Shaw, 250 N.J. Super. 461, 470, 595 A.2d 522 (App.Div. 1991)).]
The subjective criterion of serious impact includes the affect upon plaintiff's occupational endeavors, Foti v. Johnson, 269 N.J. Super. 198, 635 A.2d 104 (App.Div. 1993), as well as "a plaintiff's loss of the physical ability to continue to engage in a social or recreational activity which had been a significant and important component of [the] plaintiff's way of life...." Dabal v. Sodora, supra, 260 N.J. Super. at 401, 616 A.2d 1297; see also Brown v. Puente, 257 N.J. Super. 203, 608 A.2d 377 (App.Div. 1992).
We initially consider plaintiff's proof of objective injury. Unquestionably, plaintiff was found to be experiencing both paracervical and paravertebral spasm[2] on his initial examination of January *232 2, 1989, on discharge on April 14, 1989, and "significantly" on February 23, 1993.
In Oswin, the Supreme Court noted:
Although our requirement of objective, credible evidence will eliminate many soft-tissue injuries, we do not presume that plaintiffs alleging such injuries are necessarily barred from recovery; rather, we require objective proof of such injury and consequent disability. We recognize that producing such proof may be difficult; but even though soft-tissue injuries are not apparent in X-rays, they often manifest themselves in objective form, including swelling, discoloration, and spasm. Because most range-of-motion tests are based only on patients' pain responses, they ordinarily will not suffice unless the restricted mobility is verified by physical examination and observation.
[129 N.J. at 319-20, 609 A.2d 415.]
Although we note that in Oswin, the plaintiff also suffered spasm in her initial diagnostic evaluation, that objective manifestation of injury was no longer evident upon her release from treatment. The absence of spasm after treatment is obvious evidence that any claim of permanency based solely upon the existence of spasm will not withstand summary judgment. Stated conversely, the presence of spasm initially and thereafter during treatment is an objective manifestation of injury. Spasm that is still evident, as here, twenty-six months after cessation of active medical treatment, clearly constitutes prima facie objective evidence of permanent injury. At the very least, persistent existence of spasm raises a genuine issue of material fact sufficient to withstand summary judgment. R. 4:46-2; Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74-75, 110 A.2d 24 (1954). This conclusion is consistent with our decision in Phillips v. Phillips, 267 N.J. Super. 305, 631 A.2d 564 (App.Div. 1993), where the plaintiff initially had mild paravertebral spasm but two years thereafter did not manifest spasm in the neck or spine. Continued spasm was also recognized as objective evidence of injury sufficient to withstand a motion for summary judgment in Foti v. Johnson, supra, 269 N.J. Super. at 201, 635 A.2d 104.
*233 We note the motion judge considered critical the fact that plaintiff was not examined by a neurologist, as recommended by Dr. Thomas, and that no MRIs were performed. Plaintiff's complaints are not neurological, however. His claimed neck and mid-back pain is the result of a soft tissue injury, which are orthopedic in nature. Plaintiff is entitled to all favorable inferences on a motion for summary judgment. Judson v. Peoples Bank & Trust Co. of Westfield, supra, 17 N.J. at 75, 110 A.2d 24. The motion judge inferred that the absence of neurologic treatment diminished the veracity of plaintiff's orthopedic claim. No medical opinion is present in the record to support that inference. The only inference that could properly relate to that fact is that plaintiff's headaches initially attributable to the impact of plaintiff's head on the interior roof of the vehicle had ceased so as to render a neurologic consultation unnecessary.
We conclude that the motion judge failed to properly evaluate the medical proofs in accordance with the standard mandated by R. 4:62-2. However, we must also determine whether plaintiff established that the objective injury had a "serious impact" on plaintiff's life. Although "serious impact" is often associated with specific objective limitations upon employment responsibilities, we have concluded that "serious impact" may encompass recreational, social and academic activities. Dabal v. Sodora, supra, 260 N.J. Super. at 401-02, 616 A.2d 1297.
In Dabal, where a plaintiff was unable to go dancing, a social activity which she considered important and had engaged two or three times a week, the court held that she raised an arguable question respecting the more subjective criterion of "serious impact." Ibid. Additionally, in Brown v. Puente, supra, 257 N.J. Super. at 208, 608 A.2d 377, a student's inability to continue to engage in scholastic athletics at which he had previously excelled was held to meet the "serious impact" test.
Here, plaintiff asserted with specificity that he was a varsity athlete in high school and had remained active in competitive sports as a regular recreational activity prior to his accident. We *234 note that plaintiff was eighteen years old at the time of his accident. It is common for a person of that age, to whom athletics have been a substantial part of his recreational life, to attribute substantial importance to an inability to continue to actively participate in sports. Additionally, plaintiff also asserted that his back discomfort has interfered with the only jobs he was able to secure and also was interfering with his pursuit of a general education diploma. These facts were uncontradicted. The motion judge did not reach a consideration of these recreational or academic factors, as the court concluded that plaintiff's proof of injury was insufficient. We conclude that plaintiff's certification is sufficient to warrant the submission of his claim for noneconomic loss to a jury. We do not, as in Foti v. Johnson, supra, 269 N.J. Super. at 203, 635 A.2d 104, imply that plaintiff will prevail at trial, but clearly plaintiff's claim survives a motion for summary judgment.
The order granting defendants' summary judgment is reversed.
NOTES
[1] Summary judgment was granted to GMAC Leasing, the owner of the Kessler vehicle, on the basis of liability issues on July 10, 1992.
[2] "Spasm" is defined as a "sudden, violent, involuntary contraction of a muscle or a group of muscles, attended by pain and interference with function, producing involuntary movement and distortion." Dorland's Illustrated Medical Dictionary 1272 (23rd ed. 1957).