272 N.J. Super. 456 (1994)
640 A.2d 335
ELVA MORENO, PLAINTIFF-APPELLANT,
v.
BLANE GREENFIELD AND HILLARY GREENFIELD, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 5, 1994.
Decided April 25, 1994.
*459 Edward J. Collins argued the cause for appellant (Melvin D. Marx, attorney; Mr. Collins, on the brief).
William H. Mergner, Jr. argued the cause for respondents (Leary, Bride, Tinker & Moran, attorneys; Brian Peoples, on the brief).
Before Judges PRESSLER, DREIER and KLEINER.
The opinion of the court was delivered by DREIER, J.A.D.
Plaintiff appeals from a summary judgment dismissing her claim for non-economic losses suffered in an automobile accident. The trial judge held that she failed to satisfy the verbal threshold requirements of N.J.S.A. 39:6A-8a, as interpreted in Oswin v. Shaw, 129 N.J. 290, 609 A.2d 415 (1992). The judge specifically found that plaintiff failed to present evidence causally linking the continuing muscle spasms in her neck and upper back and the L5-S1 herniated disc, confirmed in an MRI report, with the accident. He found that plaintiff failed to establish the causal connection of the injury to the disability. Plaintiff also appeals from the trial judge's refusal to permit the filing of supplemental medical proofs, which plaintiff contended would satisfy any deficiencies the court found in the medical proof linking the injuries to the accident.
Plaintiff, Elva Moreno, then twenty-two years old, was involved in an automobile accident on August 11, 1991, when the car she was operating was struck from behind by the vehicle owned by defendant Blane Greenfield and operated by defendant Hillary Greenfield. At the time, plaintiff worked as a receptionist for a chiropractor, Dr. Jay P. Jacobson. After missing approximately six work days, plaintiff returned to work, but because of headaches, neck pain, and pain in her lower back radiating to her right *460 leg, her employer commenced to treat her on August 29, 1991. Plaintiff had no similar pain prior to the accident. She had been involved in another automobile accident approximately four years before the one that is the subject of this suit, but sustained no injuries and received no treatment following the earlier accident.
Dr. Jacobson initially treated plaintiff from August 29, 1991 through February 13, 1992. In a report dated May 7, 1992, he described his initial examination. X-rays of both the cervical and lumbosacral spine were negative. He noted, however, "[d]igital palpation of the cervical spine elicited pain and joint tenderness across the cervical spine bilaterally. Physical examination of the cervical spine revealed spasms of the cervical musculature. Range of motion testing of the cervical spine revealed a deficiency upon flexion and extension." Concerning the lower back, the report stated:
Digital palpation of the thoraco/lumbosacral spine elicited pain and joint tenderness across the lumbar spine, bilaterally. Physical examination of the thoraco/lumbosacral spine revealed spasms of the lumbar musculature, bilaterally. Range of motion testing of the thoraco/lumbosacral spine revealed a deficiency upon flexion & extension and right & left lateral flexion.
There also were significant range of motion deficiencies related to the thoraco/lumbosacral spine.
As a result of his diagnosis of acute traumatic cervical sprain with accompanying frontal headaches and muscle spasms of the cervical region, as well as acute traumatic lumbosacral sprain with resultant sciatic neuritis of the right lower extremity, muscle spasms of the lumbosacral region, and decreased range of motion of the cervical and lumbosacral region, Dr. Jacobson treated plaintiff with adjustments and other modalities.
Upon discharge in February 1992, plaintiff still suffered from range of motion deficits, and the doctor's prognosis was for permanent significant limitation of plaintiff's cervical and lumbosacral spine. In the cervical area she lost thirty degrees of flexion (fifty percent) and twenty-five degrees of extension (thirty-three and one-third percent). In the lumbosacral spine she lost twenty degrees of flexion (thirty-three and one-third percent); fifteen *461 degrees of extension (sixty percent); fifteen degrees of right lateral flexion (sixty percent), and fifteen degrees of left lateral flexion (sixty percent). The final diagnosis included "[p]ost traumatic cervical & lumbosacral sprain. Intermittent headaches. Episodes of muscle spasms of the cervical & lumbosacral region. Sciatic neuritis of the right lower extremity. Decreased range of motion of the cervical and thoraco/lumbosacral regions." At the end of his report he wrote: "It is also my opinion that these injuries are causally related to the accident of August 11, 1991."
Plaintiff left her employment with Dr. Jacobson and returned to school full time. She does not contend that her leaving this job was due to the accident or the resultant injuries. The pain continued, however, and in 1993 plaintiff returned to Dr. Jacobson, who determined that further testing was necessary. He therefore referred plaintiff to Brook Med Imaging for an MRI examination. The radiologist reported that the MRI of the lumbosacral spine showed
posterior disc herniation at the L5-S1 level. This is central to the left of the midline. Noted is a 2-3 mm. portion of herniated disc extending beyond the posterior superior margin of the S1 vertebral body. There is pressure on the adjacent epidural fat of the spinal canal. The herniation is contained.
Plaintiff then returned to Dr. Jacobson for reexamination, still complaining of neck pain, low back pain and intermittent pain in her right leg. Three weeks later, Dr. Jacobson reported that a reexamination of plaintiff's cervical spine revealed "muscle spasms of the trapezius musculature bilaterally. Digital palpation of the cervical area elicited joint tenderness and pain across the cervical region bilaterally." Range of motion tests were only slightly better than those performed fifteen months earlier. The cervical spine showed a twenty-five-degree deficiency on flexion and a twenty-degree deficiency on extension. There were no improvements on the testing of the lumbosacral spine, and Dr. Jacobson's diagnosis of the problem in both the cervical and lumbosacral regions remained the same as it had in 1992. He noted in his report that after two years and his recent reexamination, plaintiff "suffered a permanent significant limitation of use in her cervical *462 and thoraco/lumbosacral spine and that these injuries are causally related to the accident of August 11, 1991." He also stated that the MRI report from the radiologist supported his findings of an L5-S1 discopathy and was consistent with the plaintiff's complaints and the treatments she had received.
Faced with these findings, the trial judge determined that while there was some objective medical evidence of injury, it was not legally sufficient to support plaintiff's claim, nor was there any objective evidence to support the conclusion that the injury was related to the accident.

I
We have independently examined the data presented to the trial judge.[1] We recognize the constraints on proof imposed by Oswin v. Shaw, supra, 129 N.J. at 314, 609 A.2d 415, requiring "that the plaintiff must show a material dispute of fact by credible, objective medical evidence," and that such proof is insufficient if it is based solely on a "plaintiff's subjective complaints of pain not supported by `credible medical evidence.'" Ibid. (quoting Gootz v. Kelly, 140 A.D.2d 874, 528 N.Y.S.2d 446, 447 (App.Div. 1988)). Such support must consist of "objective proof of such injury and consequent disability." Id. at 319-320, 609 A.2d 415.
We, of course, will adhere to the standards expressed in Oswin. In the case before us the objective evidence of injury is clear. Dr. Jacobson observed spasms in the cervical musculature and the thoraco/lumbosacral area over a two-year period. More important, however, is the documented L5-S1 herniated disc and *463 the attendant problems suffered by plaintiff. Spasm alone could provide objective evidence of the injury and could be sufficient to satisfy the verbal threshold in certain circumstances. Owens v. Kessler, 272 N.J. Super. 225, 232, 639 A.2d 738 (App.Div. 1994); see also Oswin v. Shaw, 129 N.J. at 320, 609 A.2d 415; Cineas v. Mammone, 270 N.J. Super. 200, 211, 636 A.2d 1071 (App.Div. 1994); Arencibia v. Rosas, 270 N.J. Super. 339, 347, 637 A.2d 205 (App. Div. 1994). Adding the herniated disc to these facts clearly establishes adequate objective evidence to withstand a summary judgment motion.

II
There is no question that plaintiff's complaints of pain should be objectively related to the medical proof of injury that a plaintiff offers. Polk v. Daconceicao, 268 N.J. Super. 568, 576, 634 A.2d 135 (App.Div. 1993). Also the injury must be medically tied to the accident. "An expert opinion needs supporting objective data and discussion where the expert claims a cause-and-effect relationship between a patient's subjective complaints and a traumatic event." Id. at 575, 634 A.2d 135 (citing Buckelew v. Grossbard, 87 N.J. 512, 524, 435 A.2d 1150 (1981)). Oswin v. Shaw succinctly states that "[a] plaintiff must show a nexus between the injury and the disability." 129 N.J. at 318, 609 A.2d 415.
The trial judge inexplicably found the treating doctor's conclusion of causation to be deficient. The evidence, however, shows clearly that plaintiff suffered no attendant symptoms prior to the accident. After missing several days of work following the accident, but still remaining in pain, plaintiff then approached her employer for treatment. The pain continued until the doctor found that further treatment was not warranted, although there was continuing muscle spasm, pain and resultant loss of motion. When the pain continued for another year, plaintiff returned for an additional examination and still exhibited spasms; an MRI confirmed a herniated disc. Plaintiff stated to her doctor that *464 there were no preceding or intervening events that could have caused these problems, and he concluded that the accident in question was the cause of her problems. No evidence was presented to the contrary.
We have not lost sight of the fact that this evidence was presented at a summary judgment motion when all favorable inferences must be granted to plaintiff. R. 4:46-2; Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75, 110 A.2d 24 (1954). Unlike the trial judge, we cannot reject the conclusion that the trauma produced by the accident caused plaintiff's back problems.

III
The more difficult issue in the case is whether the impact of this injury upon plaintiff's life is serious enough to satisfy the Oswin v. Shaw standard. As stated in Oswin v. Shaw: "The injury by itself does not fulfill the statutory requirement; rather the resultant loss and disability are the key." 129 N.J. at 318, 609 A.2d 415. It is not enough that an injury be medically serious, it must have a "serious impact on plaintiff's life." Id. at 319, 609 A.2d 415. This test is somewhat subjective. Ibid. But the impact that plaintiff claims must objectively be tied to the injury. Polk v. Daconceicao, supra, 268 N.J. Super. at 575-576, 634 A.2d 135. The trial judge did not reach this question as he found that plaintiff did not satisfy the objective criteria for the presence of injuries caused by the accident, which we have determined were present in this case. We will, however, independently examine plaintiff's proofs and pass on this issue. R. 2:10-5.
In doing this, we must view plaintiff's activities as she participated in them prior to the accident. We do not treat plaintiffs as fungible commodities. If the only effect upon a plaintiff's life is that he or she can no longer engage in a vigorous activity, but the plaintiff has never engaged nor is likely to engage in such activities, the outcome would be quite different from another case where a significant part of a plaintiff's life is the *465 participation in such activities. Compare Dabal v. Sodora, 260 N.J. Super. 397, 401-402, 616 A.2d 1297 (App.Div. 1992) with Phillips v. Phillips, 267 N.J. Super. 305, 317-318, 631 A.2d 564 (App. Div. 1993), and Polk v. Daconceicao, supra, 268 N.J. Super. at 574-576, 634 A.2d 135.
Plaintiff in this case was a young woman who worked full time (and then attended school full time), worked out regularly at a gym, had a boyfriend with whom she went dancing each weekend, had two dogs which she cared for, and generally had the agility and lifestyle of a 22 year-old. She states in her certification
1. Before this accident I use[d] to be able to go dancing every Saturday night with my boyfriend and would dance most of the night from 11:00 p.m. to approximately 3:00 a.m. I thought nothing of doing that, and today at the age of 24, I can no longer do the things that most of my friends are still doing, such as dancing. I still have the same boyfriend, but he complains because I get tired too easily.
2. Now, I at least try to go dancing every other weekend but can't dance for long periods and must take rests because I get pains.
3. I have two pet Shihtzu dogs, Muneca and Monchi. I have had Muneca for four years and Monchi for two years (both before the accident). Now I can't lift the dogs as I once did. Each one weighs less than 15 lbs. and before I had absolutely no trouble lifting them.
4. I belong to Jack LaLannes and before the accident I used to go regularly, at least two times a week, for step class and aerobics. Now I go infrequently. I know that from Feb. 1993 the first time I went was 6/19/93. That night, after exercising, I was in spasms and very uncomfortable. From the accident until Feb. of 1993 I would try to go back to exercise class, but had difficulty.
5. I note that I have gained 5 lbs. since this accident and this bothers me.
6. I have trouble with daily chores and acts of living. Bending down bothers me.
7. I now find whenever I sleep on my stomach, I have terrible back pain.
Each of these difficulties in themselves appears relatively minor, especially when viewed by judges of a different generation. Yet we can appreciate that in the aggregate plaintiff has described the loss of a segment of her youth. The total picture is more of a person of middle age rather than a young woman of twenty-four. Her efforts to continue as close to a normal lifestyle as she can, even in the face of the back pain associated with her proven physical injuries, should not disqualify her claim. A jury could *466 find that the totality of the disability from the accident has had a "serious impact on plaintiff's life." Oswin v. Shaw, 129 N.J. at 319, 609 A.2d 415.
We also cannot lose sight of the fact that the disc pathology described in the MRI report, with or without present nerve impingement,[2] strongly corroborates the objective necessity for the curtailment of plaintiff's activities. Indeed, we are satisfied that the sequelae of discopathy should ordinarily be viewed more generously than similar complaints without such a strong basis of medical causation. We note that in N.J.S.A. 39:6A-8a the nine classes of compensable injuries include type 4, namely "a fracture." Although plaintiff's vertebrae did not fracture,[3] the intervening disc herniated, creating a potentially more painful and long-lasting problem.
Plaintiff, of course, must prove her damages. Even in the presence of a herniated disc, if a jury determines that there is no present or potential nerve impingement and no temporary or permanent disability or pain and suffering, then there will be no recovery. But as a physical injury, albeit a soft tissue injury, increases in severity, the manifestations of a type 7 or type 8 injury, which require more than transitory pain, can be satisfied by a more global disability, the elements of which are medically linked by objective credible evidence to a medically proven cause. Here, the "limitation of use" plaintiff suffers, namely the functions controlled by her lumbosacral and cervical spine, raises at least a jury question of a type 7 or a type 8 injury under N.J.S.A. 39:6A-8a ("permanent consequential limitation of use of a body organ or *467 member; significant limitation of use of a body function or system").
We realize that in the presence of the statute, the law is not to return to the days when every subjective complaint of back pain or other soft tissue injury resulted in a jury trial or settlement. In this case, however, and notwithstanding plaintiff's attempt to acclimate herself to the physical effects of her disability, it is clear that the loss of range of motion attributed to palpable spasms and the presence of the herniated disc, all with their attendant effects on plaintiff's ability to participate in her usual activities, warrant the reversal of the summary judgment dismissing her complaint. We therefore remand this matter for trial.
Reversed and remanded.
NOTES
[1] We recognize that some of this data was received at the last minute. As a result of recently losing his only associate, and dealing with a busy chiropractor and an allegedly temperamental radiologist, plaintiff's attorney requested and received an initial adjournment of the summary judgment motion. On the adjourned date, counsel just barely secured the appropriate medical reports. The last one, in fact, had a handwritten addition obtained by counsel on the way to court. He offered to supplement all of the data if the court so required if the motion could be again adjourned, but his request was denied.
[2] Although the MRI report does not specifically delineate the nerve impingement, the bulging of the disc into the spinal canal, with the resulting spasms detected by the treating doctor and radiating pains reported by plaintiff, are strong proof that the discopathy has affected adjacent nerves in the spine.
[3] It would be anomalous for any fracture, even of a finger or toe, to satisfy the statute, but for a herniated disc to be excluded, even when it produces spasm and radiating pain.