273 N.J. Super. 38 (1994)
640 A.2d 1192
DANAY CAVANAUGH AND THOMAS CAVANAUGH, PLAINTIFFS-APPELLANTS,
v.
STEPHEN J. MORRIS AND/OR JOHN DOE, JOINTLY, SEVERALLY AND/OR IN THE ALTERNATIVE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted April 26, 1994.
Decided May 6, 1994.
*39 Before Judges PRESSLER, DREIER and BROCHIN.
William J. Hayes and Associates, attorneys for appellants (John J. Armano, Jr., on the brief).
Powell, Birchmeier, Berger & Powell, attorneys for respondent Stephen J. Morris (Lawrence S. Berger, on the brief).
PER CURIAM.
This is another verbal threshold case in which an injured passenger, plaintiff Danay Cavanaugh, whose husband Thomas Cavanaugh sues per quod, appeals from a summary judgment dismissing her complaint. We reverse.
Since the Supreme Court's decision in Oswin v. Shaw, 129 N.J. 290, 609 A.2d 415 (1992), this court has been besieged with appeals by automobile accident victims whose complaints have been dismissed by summary judgment on the ground that they have failed adequately to demonstrate that their soft tissue injuries meet the statutory standards of N.J.S.A. 39:6A-8(a). Oswin and its numerous progeny permit the articulation of basic principles which must inform our evaluation of the trial court's application of the requisite summary judgment model. In sum, a complaint alleging a permanent soft tissue injury survives a defense motion for summary judgment if plaintiff can raise a genuine and material factual dispute of these propositions: first, that the allegation of injury is based on credible, objective, medical evidence; second, that objective medical evidence supports the causal relationship between the injury and the disability alleged to have resulted therefrom; third, that the disability has the objective *40 capacity to have a serious impact on the plaintiff's life; and fourth, that from the subjective point of view of plaintiff, the disability did have such a serious impact. See, e.g., Moreno v. Greenfield, 272 N.J. Super. 456, 640 A.2d 335 (App.Div. 1994); Owens v. Kessler, 272 N.J. Super. 225, 639 A.2d 738 (App.Div. 1994); Arencibia v. Rosas, 270 N.J. Super. 339, 637 A.2d 205 (App.Div. 1994); Cineas v. Mammone, 270 N.J. Super. 200, 636 A.2d 1071 (App.Div. 1994); Dabal v. Sodora, 260 N.J. Super. 397, 616 A.2d 1297 (App.Div. 1992). Our review of this record persuades us that plaintiff's showing on the summary judgment motion was adequate to meet this burden.
On May 1, 1989, plaintiff, then not quite nineteen, was a passenger in a truck driven by her husband which was struck in the rear by a vehicle operated by defendant Stephen J. Morris. Her head struck a metal grating behind her seat and her right knee struck the passenger door. Complaining of blurred vision, severe headache, left shoulder and right leg pain, and numbness in her left hand, she was transported by ambulance to a hospital emergency room. X-rays were negative for fracture and she was released with instructions to rest and to obtain follow-up medical treatment. Because of frequent residential moves, she treated with several different primary physicians in an effort to obtain relief from her frequent prolonged severe headaches, neck and back pain, numbness and resulting weakness in her hand, and continuing problems with her knee, which she claims to have been exacerbated by a later fall caused by her knee and hip having locked, a consequence of the original injury.
Plaintiff's first physician, who saw her during the month following the accident, diagnosed "cervical sprain/strain, dorsal and lumbar spine somatic dysfunction, and left thoracic outlet syndrome." A neurological consultation a year after the accident resulted in a diagnosis of "chronic strain and sprain injury involving the cervical, dorsal and lumbosacral paraspinal musculature" and "post traumatic headache disorder." A follow-up examination by the neurologist in July 1990 reported "persistent paracervical *41 and upper thoracic muscle spasm. The right knee appears to be significantly swollen and is tender to palpation and range of motion." The August 1991 report of a new treating physician noted continued debilitating post-traumatic headaches, continuing left arm numbness and tingling, a Tinel's sign at the left wrist, and cervical and lumbosacral myofascial pain syndrome.
In her deposition taken in January 1992, plaintiff described her present symptoms as chronic pain in her right knee, hip, upper back and neck as well as a problem holding on to things with her left hand. She testified that her headaches were "under control" and that her main problems were with her hip and knee. With respect to the effect of these physical problems on her life, she testified that she is no longer employed outside her home. She explained that
I used to be a waitress before my accident and I can no longer  at least I feel I can no longer stand on my feet for more than three hours without feeling pains in my knee, my hip and my lower back. I have to vary from standing to sitting, to standing. I cannot stand no more than three, four hours at a time without experiencing pain.
She also testified that her injury and its sequelae had a continuing adverse effect on her sex life. Not only does she "get sharp stabbing pains through my hip," but also "just sex in general is, how can I say, uncomfortable most of the time. My sex drive with my husband has decreased drastically from when we first met."
We are satisfied that the report of continuing spasm long after the accident meets Oswin's objective medical-evidence requirement. See, e.g., Owens, supra. The medical reports also support the requisite causal relationship between the injury and the asserted resulting disability. Nor do we have any doubt that the asserted effect of the disability on plaintiff's employment capacity and marital relations would permit a jury to conclude that a serious impact resulted. We do not suggest that a jury would be compelled to make any of these findings in plaintiff's favor. We hold only that the showing on the summary judgment motion provided an adequate basis on which a jury could make favorable *42 findings. And that is all that is necessary to withstand the motion.
We add only that the Legislature's verbal threshold scheme patently did not intend to exclude all soft tissue injuries. The trial courts must carefully scrutinize the plaintiff's proofs offered in opposition to a summary judgment motion in the light of Oswin and the subsequently developing jurisprudence fairly to determine whether the claim for noneconomic loss may continue.
The summary judgment appealed from is reversed and the matter is remanded to the trial court.