772 A.2d 940 (2001)
339 N.J. Super. 482
Judith MONTEMAYOR, Plaintiff-Appellant,
v.
James S. SIGNORELLI, Mark P. Signorelli, Maria R. Vantol and Carina Vantol, Defendants-Respondents, and
Ruben T. Reyes and Julian Montemayor, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued January 30, 2001.
Decided April 19, 2001.
Edward M. Colligan, Newark, argued the cause for appellant (Colligan & Colligan, attorneys; Mr. Colligan, on the brief).
Curtis J. Turpan, Hackensack, argued the cause for respondents Maria R. Vantol and Carina Vantol (Harwood Lloyd, attorneys; *941 Mr. Turpan, of counsel and on the brief).
No brief filed on behalf of respondents James S. Signorelli and Mark P. Signorelli.
Before Judges STERN, RODRIGUEZ and FALL.
The opinion of the court was delivered by STERN, P.J.A.D.
Plaintiff appeals from the grant of summary judgment to defendants in this automobile accident case and from the denial of her motion for reconsideration. In addition to arguing that "there is objective [medical] evidence of injury which satisfies the verbal threshold" and that she "suffered injuries that had a serious impact upon her life and satisfy type 8" under the threshold statute, N.J.S.A. 39:6A-8(a), plaintiff asserts that "the grant of summary judgment should be reversed [because] the plaintiff is not subject to the verbal threshold." She claims that the verbal threshold statute does not apply because she is an adult daughter living with her insured father and that the Legislature and public policy preclude applying her father's choice of the verbal threshold upon her.
At about 10:59 p.m. on April 6, 1996, plaintiff was a passenger in an automobile owned by defendant Ruben T. Reyes,[1] but being driven by her father, defendant Julian Montemayor, when the vehicle was involved in a three-car accident on Kinderkamack Road in River Edge. On April 8, 1996, she went to the emergency room of Holy Name Hospital where she was diagnosed by the emergency room physician as having suffered a "cervical muscle strain with spasm." About six months later, on August 7, 1996, plaintiff sought treatment from Dr. Alexandra E. Rubin. On August 16, 1996, a magnetic resonance imaging study ("MRI") of plaintiff's spine was performed at Dr. Rubin's request. Dr. Richard Claps, a radiologist, reported:
No disc herniation or canal stenosis. Cervical cord and cervical medullary relations are normally maintained. On the axial view which extended from the upper portion of C4 to the C6-7 levels, there is no foraminal narrowing. On the T2 portion of the study there is normal signal from the cervical vertebral bodies and spinal cord. Mild diminished signal from the C2-3 disc consistent with disc desiccation. Signal from the remainder of the cervical vertebral discs are within normal limits.
CONCLUSION: Disc desiccation involving the C2-3 disc, otherwise normal study of the cervical spine.
Dr. Claps also reported that the MRI of the lumbar spine, simultaneously performed, was "normal."
Dr. Rubin supervised plaintiff's physical therapy until discharged on December 30, 1996. In her March 20, 1997 report, Dr. Rubin rendered a final diagnosis of "cervical sprain/strain; C2-C3 disc desiccation; fibromyositis; and lumbosacral sprain/ strain." Dr. Rubin further concluded that:
Based on the history provided by the patient, my initial evaluation and follow-up, I believe that the injuries sustained were directly related to the motor vehicle accident on 4/5/96 (the patient was pain-free before the accident). In this type of injury (sprain and strain), the involved ligaments and muscles fibers are stretched and torn, causing inflammation with edema and some hemorrhage. *942 These injured fibers are replaced by a scar tissue which will never be as flexible and elastic as normal tissue, contributing to limitation of motion and chronic recurrent fibromyositis.
At the time of the accident, plaintiff was twenty-seven years old and lived with her father. In her papers filed in opposition to the summary judgment motions, plaintiff certified she "did not own a vehicle" at the time of the accident and "was unaware that [her] father's [automobile] insurance policy contained a verbal threshold" limitation. Plaintiff further certified:
The day after the accident, I experienced increasing pain and stiffness in my neck and back. Because of the increasing pain, I visited the emergency room at Holy Name Hospital. In addition, I stayed home from work for a few days. Thereafter, I continued to suffer with pain and stiffness in my low back and neck. This pain and stiffness interfered with my ability to function normally. I did not seek further care immediately as I hoped that these [symptoms] would subside. However, the symptoms persisted and I finally decided to seek some additional medical care with Dr. Rubin. Over the next five months, I received some limited physical therapy and my symptoms did improve. However, at the end of my treatment I continued to suffer with pain and stiffness. These problems continued for another approximately six months following my treatment. During that additional six month period, I continued to have difficulty and limitation with lifting and bending and I treated myself with warm compresses and over the counter medicine. During this period, I [continued] to be limited at work and at home.
... As a result of those injuries I suffered a significant limitation of use of a body function or system. In particular, I lost my ability to normally and fully engage in my normal activities at work, at home and in recreation for over a year. At work, I was unable to fulfill my duties as a nurse. Because of neck and back pain, I was forced to avoid lifting patients. Lifting patients was a regular part of my daily duties as a nurse in a nursing home. During the year after the accident, I was unable to perform this heavy duty on approximately two out of every five working days. On those days, I was forced to ask other workers to take on this duty. In addition, I was forced to slow my pace and to move carefully so as not to worsen my condition. At home, I was also limited in my activities. On my days off, I would often stay home to rest my back and neck. I was unable to perform any household chores that required heavy lifting or bending. In addition, I avoided carrying heavy items when shopping. Prior to the accident, I was a regular bowler and I would go bowling every other week. During the year following the accident, I was forced to give up this regular recreational and social activity which was an important component of my life.
Judge Joseph Yannotti concluded that plaintiff had to satisfy the verbal threshold but did not do so. With respect to the latter, Judge Yannotti concluded:
In order to survive a motion for summary judgment, the plaintiff must show [a] material dispute of fact by credible, objective evidence. Plaintiff must also show a nexus between the injury and the disability. Finally, the ... plaintiff must show that the injury had a serious impact on the plaintiff and her life.
....
Now, the evidence in this case shows that the plaintiff did not seek any medical treatment until two days after the *943 accident. At that time, she sought treatment at the emergency room of Holy Name Hospital. She was diagnosed with acute cervical muscle strain with spasm. Also, [p]laintiff's neck was found to be stiff, without bony tenderness, with spasm, range of motion limited, secondary to pain.
The plaintiff did not seek further treatment until August 7, 1996 ... This was four months after the accident ... Dr. [Rubin] noted in the report that the plaintiff did not seek treatment earlier, because she was working two jobs.
....
The plaintiff's diagnosis was cervical sprain or strain. And the doctor prescribed physical therapy as a treatment.
An MRI was ... performed on August 16, 1996. The MRI of the cervical spine revealed dis[c] desiccation.
Subsequently, there's no evidence of any ... spasm. The MRI revealed that... the lumbar spine was normal. There was no dis[c] herniation. There was no ... abnormality of the facet joints.... [T]he only treatment that resulted here ... [was] some physical therapy on nine separate occasions.
So, the sum and substance of the medical testimony is that there was a dis[c] desiccation at C2-3 ... However, there was ... no dis[c] herniation. The lumbar spine was normal and there was no abnormality of the facet joints.
The Court finds that, based on the standards established by the Supreme Court in [Oswin v. Shaw, 129 N.J. 290, 609 A.2d 415 (1992)], that the medical evidence ... is not sufficient to establish a serious injury as required by [Oswin]. There ... was spasm earlier on, but that spasm dissipated and does not appear laterdoes not appear at any point after four months after the accident.
Furthermore, the MRI, which is the most objective measure of the injuries, shows only dis[c] desiccation, which is not necessarily related to this particular accident and could very well have been the result of the normal processes of the body, not related specifically to this particular trauma or this particular injury.
We agree with this analysis. See Carmichael v. Bryan, 310 N.J.Super. 34, 50-51, 707 A.2d 1357 (App.Div.1998) (plaintiff failed to establish a "persistent muscle spasm"); Moreno v. Greenfield, 272 N.J.Super. 456, 462, 640 A.2d 335 (App. Div.1994) (summary judgment reversed on appeal where spasms observed "over a two year period"); Owens v. Kessler, 272 N.J.Super. 225, 232, 639 A.2d 738 (App. Div.1994) (summary judgment reversed on appeal where spasm continued twenty-six months after treatment). We add only that, while Dr. Rubin appears to report that even the disc desiccation was causally related to the accident, such a "drying" of tissue, see Schmidt's Attorneys' Dictionary of Medicine D-54 (December 2000), is usually considered degenerative, and the motion judge was justified in rejecting the existence of "credible, objective evidence" that the case falls within one of the categories in N.J.S.A. 39:6A-8(a) and that her condition was caused by the accident. See Oswin, supra, 129 N.J. at 314, 319-20, 609 A.2d 415; Sherry v. Buonansonti, 287 N.J.Super. 518, 522, 671 A.2d 606 (App. Div.), certif. denied, 144 N.J. 588, 677 A.2d 760 (1996); Cavanaugh v. Morris, 273 N.J.Super. 38, 39-40, 640 A.2d 1192 (App. Div.1994); Polk v. Daconceicao, 268 N.J.Super. 568, 575, 634 A.2d 135 (App. Div.1993); Phillips v. Phillips, 267 N.J.Super. 305, 318-19, 631 A.2d 564 (App. Div.1993). Moreover, particularly in the absence of proof that plaintiff's income or job status were in any way affected by the limitations she referred to in her certification, the record does not support a finding *944 that the injuries had a serious impact on plaintiff's life. See Oswin, supra, 129 N.J. at 318, 609 A.2d 415; Sherry, supra, 287 N.J.Super. at 522, 671 A.2d 606; Cavanaugh, supra, 273 N.J.Super. at 39-40, 640 A.2d 1192; Phillips, supra, 267 N.J.Super. at 317-18, 631 A.2d 564. Cf. Gilhooley v. County of Union, 164 N.J. 533, 541, 753 A.2d 1137 (2000) (quoting Brooks v. Odom, 150 N.J. 395, 406, 696 A.2d 619 (1997)) (resolving similar threshold issue under the Tort Claims Act).
Because we agree with the motion judge that plaintiff did not satisfy the verbal threshold, we must consider whether she had to do so. On this issue Judge Yannotti stated, in pertinent part:
The statute in question, N.J.S.A. 39:6A-8(a), speaks of the election of the tort options. And one of those options provides that every owner of an automobile is exempt from tort liability for noneconomic loss to a person who is subject to this subsection and who is required to maintain coverage mandated by ... this act or is a person who has a right to receive benefits under 39:6A-4.
And under 6A-8.1, the election that is made by the policyholder shall apply to the named insured and any immediate family member residing in the insured's household. And the statute defines immediate family member to mean the spouse of the named insured and any child of the named insured or spouse residing in the named insured's household who is not a named insured under another insurance policy.
The Court is satisfied that the statute applies in this case. The statute, as I said, applies to the tort election by the insured and to any member of his immediate family as defined in the statute. That includes any child of the insured, according to the plain language of the statute, who is living in the insured's household.
The statute does not reference minor child. It merely says any child, without any limitation as to age. Moreover and most significant of the [L]egislature's intent, is the further requirement that the child not be ... a named insured under another automobile insurance policy. That language reflects a situation where the child would own his or her own car and have contracted for the child's own insurance. And these are... actions that are not generally undertaken by minors, but are instead indicative of the actions of adult children.
So, therefore, I think that other language, looking to the statute as a whole, also indicates that the [L]egislature did not intend to limit the application of the tort election to ... minor children who are living at home with ... the insured.
Again we agree with Judge Yannotti, and add only the following brief discussion.
At the time of this accident, N.J.S.A. 39:6A-8 provided in part:[2]
The tort option provisions of subsection b. of this section shall also apply to the right to recover for noneconomic loss of any person eligible for benefits pursuant to section 4 of P.L.1972, c. 70 (C. 39:6A-4) but who is not required to maintain personal injury protection coverage and is not an immediate family member, as defined in section 14.1 of P.L.1983, c. 362 (C. 39:6A-8.1), under an automobile insurance policy.
*945 There is no dispute that (independent of her rights as a passenger in the Reyes vehicle) plaintiff was entitled to personal injury protection ("PIP") benefits as a member of her insured father's "family residing in his household." See N.J.S.A. 39:6A-4. Moreover, because plaintiff is an "immediate family member" residing in her father's household, she is bound by N.J.S.A. 39:6A-8.1(a) which provides:
Election of a tort option pursuant to section 8 of P.L.1972, c. 70 (C. 39:6A-8) shall be in writing and signed by the named insured on the coverage selection form required by section 17 of P.L.1983, c. 362 (C. 39:6A-23). The form shall state the percentage difference in the premium rates or the dollar savings between the two tort options. The tort option elected shall apply to the named insured and any immediate family member residing in the named insured's household. "Immediate family member" means the spouse of the named insured and any child of the named insured or spouse residing in the named insured's household, who is not a named insured under another automobile insurance policy.

(Emphasis added.)
As Judge D'Annunzio noted with respect to a similar issue, "our duty is to construe and apply the statute as enacted." Ibarra v. Vetrano, 302 N.J.Super. 578, 581, 695 A.2d 757 (App.Div.1997) (quoting In re Closing of Jamesburg High Sch., 83 N.J. 540, 548, 416 A.2d 896 (1980)).[3] As plaintiff was a member of her father's household, owned no vehicle and was not a named insured under another automobile policy, she was bound by her father's election. Moreover, particularly because driver's licenses cannot now be obtained until age eighteen, see State in Interest of D.J.F., 336 N.J.Super. 214, 218 n. 4, 764 A.2d 472 (App.Div.2001), we also agree with Judge Yannotti that N.J.S.A. 39:6A-8.1 was not intended to apply only to minor children or to those who are still dependents.
By reference to statutory provisions outside Title 39, our dissenting colleague suggests that the Legislature has distinguished between a "child," referring to youth, and a "son" or "daughter" with respect to descendants of any age. The dissent therefore finds an ambiguity in N.J.S.A. 39:6A-8.1(a) with respect to the meaning of the word "child." Independent of the fact that the statute on its face is concerned with any child who lives with an insured, we are obligated to give the statute its plain or ordinary meaning, not to create an ambiguity because we dislike the impact of its provisions. See, e.g., Burns v. Belafsky, 166 N.J. 466, 473, 766 A.2d 1095 (2001); Merin v. Maglaki, 126 N.J. 430, 434-35, 599 A.2d 1256 (1992). Moreover, we are presented with no legislative history, and independently have found none, to support the assertion that N.J.S.A. 39:6A-8.1(a) is limited to a minor child, to children who are still dependents, or to some children but not others. Ibid. And it is undisputed that plaintiff is entitled to PIP benefits under her father's policy irrespective of her age.
We further agree with Judge Yannotti's analysis on the motion for reconsideration that there is no unconstitutional discrimination against emancipated children who do not own cars and live with their parents. This is particularly so because *946 they obtain coverage for P.I.P. benefits under N.J.S.A. 39:6A-4.
Plaintiff contends that, in this day and age, elderly parents frequently live with their middle-aged children and their children's spouses, and that adult children, who do not own a vehicle, should not be bound by the verbal threshold election of parents who live with them. There is no indication in this record, however, that plaintiff's father moved into her household after she already resided there. In fact, plaintiff does not deny being a member of his "household." We leave for resolution in the proper case whether, in other circumstances, an insured parent can be said to be living in the child's "household," as opposed to the child living "in the named insured's household," within the meaning of N.J.S.A. 39:6A-8.1, and if so, whether that makes a material difference.
The judgment is affirmed.
RODRIGUEZ, A.A., J.A.D., dissenting in part.
I agree with the majority that, if the verbal threshold were to be applicable to plaintiff, she has not presented sufficient evidence of injury or disability to vault over it. However, I respectfully disagree with the majority's conclusion, that plaintiff, an emancipated adult, is bound by her father's election of the verbal threshold option pursuant to N.J.S.A. 39:6A-8.1a.
N.J.S.A. 39:6A-8.1a provides that the named insured's tort option shall apply to the named insured and the immediate family members residing in his or her household. The statute also provides that "`[i]mmediate family member' means the spouse of the named insured and any child of the named insured or spouse residing in the named insured's household who is not a named insured under another automobile insurance policy." N.J.S.A. 39:6A-8.1a. Here, I would hold that plaintiff is not an "immediate family member" within the meaning of N.J.S.A. 39:6A-8.1a because she is an adult, and no longer a "child," of the named insured.
It is well settled that in construing a legislative enactment courts are required to "effectuate the legislative intent in light of the language used and the objects sought to be achieved." Tung v. Briant Park Homes, Inc., 287 N.J.Super. 232, 237, 670 A.2d 1092 (App.Div.1996) (citing State v. Maguire, 84 N.J. 508, 514, 423 A.2d 294 (1980)). Based on the language and objectives of N.J.S.A. 39:6A-8.1a, I would conclude that, at best, the meaning of the statutory term "child" is ambiguous and should not be applied to the plaintiff here.
First, I look to the statutory language. Webster's Unabridged New International Dictionary contains several definitions of the noun "child." Among the definitions are the following:
1. An unborn or recently born human being; fetus; infant; baby;
2. A young person of either sex, esp. one between infancy and youth; hence, one who exhibits the characteristics of a very young person, as innocence, obedience, trust, etc.
* * * * * *
4. A son or a daughter; a male or female descendant in the first degree; the immediate progeny of human parents. In Law, legitimate offspring; also, sometimes, esp. in wills, an adopted child, or an illegitimate offspring, or any direct descendant as a grandchild, as the intention may appear.
* * * * * *
6. A descendant, however, remote; member of the tribe or clan; used in pl; as, the children of Israel.
The American Heritage College Dictionary contains the following definitions:
*947 1. A person between birth and puberty.
2.a. A human fetus. b. An infant; a baby.
* * * * * *
4. A son or daughter; an offspring.
5. A member of a tribe; descendant.
Thus, the ordinary meaning of the term "child" has at least two interpretations: a person who has not attained adulthood or any son or daughter regardless of age.
Defendants and the majority conclude that, in enacting N.J.S.A. 39:6A-8.1a, the Legislature intended the latter meaning. I am not so sure. In part, the trial court and the majority conclude that the term "child" cannot be limited to minors because at present "a driver's license cannot be obtained until age eighteen," pursuant to N.J.S.A. 39:3-10. Therefore, they reason, a minor could not be insured under any automobile insurance policy. However, I note that at the time N.J.S.A. 39:6A-8.1 was enacted, a seventeen-year old person could obtain a driver's license and thus, could be a named insured under the policy of a parent, stepparent, or other relative.
It is also noteworthy that the Legislature has used the terms "son" or "daughter" in other contexts when referring to descendants of any age. For example, N.J.S.A. 26:6-58(b)(2) deals with disposition of human bodies or parts of human bodies. The Legislature designated "adult son or daughter," not an "adult child," [among those authorized to make a disposition pursuant to the statute]. N.J.S.A. 26:6-58(b)(2), see also N.J.S.A. 26:6-58.1a(2) (referencing "adult son or daughter"). In N.J.S.A. 37:1-1, the Legislature prohibited certain marriages among close relatives; it refers to "sons" and "daughters" not "children" of siblings. N.J.S.A. 43:21-19 draws a distinction between "son," "daughter" and "child under the age of 18."[1]
Next, I look to the objectives of the legislation. N.J.S.A. 39:6A-8.1 is a central feature of the New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act of 1984 (the Act). The Sponsor's Statement to the Act indicates that "[i]n return for electing the tort limitation [verbal threshold] option, an insured would receive a reduction in his [sic] bodily injury liability premium stated as a percentage of the coverage premium." On the other hand, "automobile owners may elect the no-threshold option of subsection N.J.S.A. 39:6A-8b for themselves and their immediate families living at home and pay an extra premium for that additional coverage." Harbold v. Olin, 287 N.J.Super. 35, 41, 670 A.2d 117 (App.Div.1996) (citing Murphy v. Allstate Ins. Co., 252 N.J.Super. 280, 284, 599 A.2d 916 (App.Div.1991)). If an automobile owner pays the extra premium for the unlimited right to sue, the benefit is provided. Ibid. Thus, there is a connection between the election to give up the right to sue for non-economic losses flowing from a minor injury, and the concomitant reduction in premium.
From that context, it is reasonable to assume that the Legislature intended that a dependent minor, who is part of a household economic unit, should be bound by the election of the head of the household. However, in the case of plaintiff, an employed adult, a reduction in her father's premium may not benefit her, yet her right to sue is curtailed.
*948 The record shows that plaintiff is a twenty-seven year old staff nurse. Her father is sixty. The record does not show whether he is employed or wholly or partially dependent on plaintiff financially. The interplay of their individual incomes, if any, with respect to common household expenses, is not known. Even if he were financially dependent on her, it is clear that he is not bound by her tort option election. However, the majority would hold her bound by his election. This by virtue of an enactment which is intended to contain premium costs by affording a choice of coverage. Plaintiff gets the detriment of a limitation on her right to sue, but does not benefit from the incentive of a lower premium. Such result may be justifiable in the case of a minor or dependent young adult living in the named insured's household. Not so here.
I also note that a person who is not required to maintain insurance is deemed to have elected the no threshold option. N.J.S.A. 39:6A-8b. Here, plaintiff is not required to maintain insurance because she does not own a motor vehicle and therefore, has not had to make an election. Yet, the verbal threshold option is applied to her because she is a resident immediate family member in a named insured's household. This vicarious election deprives her of substantial rights.
Pain and discomfort from disabilities which do not fit any of the nine statutorily-defined categories set by N.J.S.A. 39:6A-8a, are not necessarily minimal. Juries frequently award respectable sums for soft-tissue injuries. Those persons who have elected the verbal threshold are barred from receiving such awards. They have made a choice. They exchanged the right to sue for these type of injuries for a lower premium.
Plaintiff's father has made such a choice. Plaintiff has not. She is no different than any adult neighbor who does not own a motor vehicle and does not reside with a parent or stepparent who is insured. Nor does she stand any different from an aunt, uncle or cousin who may reside in her father's household. Yet it is clear that the neighbor, aunt or cousin enjoys an undiminished right to sue for non-economic losses arising out of an automobile accident. In my opinion, these incongruities and unintended results would be avoided if the term "child", as used in N.J.S.A. 39:6A-8.1a, is construed to mean minor or dependent children.
Thus, I would reverse.
NOTES
[1] It is not clear when the claims against defendants Reyes and Julian Montemayor were dismissed, but the notice of appeal does not challenge the dismissal of plaintiff's case against them.
[2] The statute was amended by L. 1998, c. 21, but the quoted provision of N.J.S.A. 39:6A-8 remains a part of N.J.S.A. 39:6A-8 for purposes of "basic" and "standard" policies under the Automobile Insurance Reduction Act of 1998 ("AICRA"). N.J.S.A. 39:6A-8.1 was not amended by AICRA.
[3] Ibarra, on which plaintiff relies, is distinguishable because there the plaintiff was the insured's mother and N.J.S.A. 39:6A-8.1 does not include a parent; plaintiff "was not [her daughter's] spouse and she is not one of [her] children." Ibarra, supra, 302 N.J.Super. at 581, 695 A.2d 757.
[1] The Legislature has used the term "offspring" only when referring to the issue of animals.