# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5020-16T4

T.E.J.,

    Plaintiff-Appellant,

v.

H.A.W.,

    Defendant-Respondent.

_____

Argued April 18, 2018 – Decided October 5, 2018

Before Judges Koblitz and Suter.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FD-07-2737-13.

Luretha M. Stribling argued the cause for appellant.

Respondent has not filed a brief.

The opinion of the court was delivered by

SUTER, J.A.D.

Plaintiff T.E.J. appeals the July 13, 2017 order that denied reconsideration of an order that granted defendant H.A.W. residential custody of N.J., a minor,

and allowed her to move to Georgia with the child. We vacate the July 13, 2017 order and remand the case for further proceedings consistent with this opinion.

Plaintiff and defendant are the parents of N.J. who was born in 2013. Defendant testified N.J. resided with her from birth until she was about three years old. Plaintiff has had significant contact and involvement with N.J. By August 2016, defendant was in a dating relationship with another person.

On August 26, 2016, plaintiff filed an order to show cause in the Family Part seeking custody of N.J. He claimed defendant's boyfriend did not want to care for the child, was physically abusive to defendant and that the child was staying overnight with a baby sitter, not defendant. Defendant acknowledged the child was in daycare and, at times, that she limited plaintiff's communications with the child because he called "at all different times, anytime that he wanted to, upsetting my boyfriend." The court ordered the parties to share joint legal custody of N.J., but temporarily granted residential custody of her to plaintiff and scheduled a custody hearing.

Before the custody hearing was held, plaintiff filed an order to show cause in December 2016 seeking to eliminate defendant's overnight parenting time because he claimed N.J.'s safety was endangered by domestic violence between defendant and her boyfriend. At the time, defendant lived in a two-bedroom

apartment with her mother, who was disabled. The court ordered that defendant could exercise parenting time on the weekends supervised by her mother. N.J. remained in plaintiff's temporary residential custody.

Defendant obtained a restraining order against her boyfriend and ended that relationship. She moved to Savannah, Georgia, to live with her sister, brother-in-law and their three children. Defendant filed an application with the court to relocate to Georgia with N.J. to give her "a better quality of life in a safe healthy environment." Plaintiff opposed defendant's application, asserting he was "spiritually, mentally bonded with [his] daughter."

The court scheduled a hearing to address custody and removal, advising defendant she had to tell the court "why it's in the best interest of the child for the child to live with [her]. And…to show [the court] why it's in the best interest for the child to live in Georgia and why that's going to be a stable situation." The court gave the parties two lists of the issues they had to address at the hearing.[1] The parties could not resolve the custody or removal issues in mediation.

---

[1] The record implies these lists were the custody factors as set forth under N.J.S.A. 9:2-4 and the Baures factors set forth in that case. Baures v. Lewis, 167 N.J. 91, 116-17 (2001).

The court conducted a custody and relocation hearing on April 13, 2017. We glean the facts from this hearing and prior proceedings.

Defendant resides in Savannah, Georgia, with her sister, Y.G., her brother-in-law and their three children ages sixteen, eleven and five. This arrangement allows her to save money for a house. She is employed at a local Holiday Inn, working during weekdays until 5:00 p.m. Defendant testified she is in a stable environment, has the support of her family and that the child will be safe. Defendant is not unfit as a parent. She moved to Georgia "for a better quality of life." She testified that many family members reside in the Savannah area; only her parents and brother are in New Jersey. She has had no communication with her former boyfriend.

If allowed to have custody of N.J. and to move her to Georgia, defendant agreed that plaintiff could exercise parenting time for the summer months starting in May, after school is finished, until August, when school resumes and during any short breaks. Her proposal was for plaintiff to have the child nearly six months out of the year. Plaintiff was offering her just one week of parenting during the year.

Defendant's mother, L.H., testified that relocation to Georgia was better for defendant. She denied that defendant kept N.J. at the babysitter's overnight.

She claimed that plaintiff did not answer his phone when she called.

Defendant's sister, Y.G., testified that she and her husband have a four and one-half bedroom house. They both own their own trucks and trucking companies. There is a daycare and an elementary school nearby for N.J.

Plaintiff is a firefighter with the City of Newark. He cannot relocate closer to Georgia. He resides in Newark where he owns his own four bedroom house. His mother and other relatives live in Newark. He has two older daughters, ages sixteen and fourteen, who live with their mother in Newark. He exercises parenting time with the two older daughters on the weekend and at other times. His daughters testified they would be sad and disappointed if N.J. moved to Georgia.

Plaintiff's work schedule allows him a number of days off. For work days, he relies on his mother and other daughters to watch N.J. He testified that N.J. had "consistency" by living with him.

Plaintiff's mother, D.J.M.N., testified that N.J. had been placed with the babysitter "almost all the time," including at night when she lived with defendant. D.J.M.N. was saddened by the prospect of N.J. living in Georgia because she "is a part of our lives right now." The child has a great relationship with her son and the child's other siblings.

A-5020-16T4

Defendant was critical of plaintiff's alleged unwillingness to allow her to communicate with N.J. Defendant wanted to maintain a bond with her child and believed that plaintiff would not foster that for her. She claimed he was not truthful with the court about the child's enrollment in certain activities. He changed the school that N.J. was attending without telling defendant. There were times when plaintiff did not allow her to communicate with N.J. Defendant doubted that plaintiff would foster her relationship with the child. On one trip to New Jersey, she was not able to see the child.

Defendant claimed that plaintiff was not a good role model for N.J. because he had relationships with different women. She denied she placed the child in any danger because of her relationship with her former boyfriend. Defendant claimed plaintiff's motivation for custody was to avoid child support.

Plaintiff criticized defendant for leaving N.J. overnight with a babysitter. She could never give him a specific time when she would exercise her parenting time. He claimed that defendant's housing while in New Jersey was not stable and that she moved from place to place. He denied his motivation for seeking custody was to avoid child support. She became involved with a boyfriend who physically abused her and he was afraid something might happen to the child.

A-5020-16T4

On April 13, 2017, the trial court awarded residential custody of N.J. to defendant and allowed her to move with defendant to Georgia. It found that defendant made a rational choice to move to Georgia to live with her sister because of the domestic violence she faced with her boyfriend. The court had no reason to believe that living with her sister would be unstable. The court also found that plaintiff's objection to the child's removal was reasonable because of his close relationship with N.J. and family presence in New Jersey. The court found the child would have the same educational, health and leisure opportunities in Georgia as in New Jersey. She did not have any special needs.

The court observed that the effect on these families will be difficult no matter what is ordered. Plaintiff had no realistic opportunity to relocate given his job and his house. The child has a good relationship with her older siblings. There is no history of domestic violence between the parties. The needs of the child can be met equally in either place. Both environments are "stable." Neither parent has been designated as unfit. Plaintiff has an "extensive" relationship with N.J. N.J. lived primarily with her mother for the first three years. The parents' employment responsibilities are equal. He has a demanding job but also has significant time off. Defendant's job is less demanding; she is not working in the evening.

A-5020-16T4

The court noted plaintiff had more "resources to put to the disposal of his child and to help his child accomplish and develop her skills and abilities." However, the court found the involvement of two parents "outweigh[ed]" that factor. Specifically, the court found that N.J. will not have as much of a robust relationship with both parents if she is in the custody of the plaintiff rather than defendant. Over a period of time, the court believed that defendant's relationship with the child would be "significantly degraded" because she would not have as much contact with N.J. and visitation would be more difficult to arrange. "At the end of the day, I think it's most important that this child have as much as a relationship with both of the parents as the child can have. I don't think that's going to happen if the child is with the father."

The court ordered the parents to share joint legal custody. However, the court awarded residential custody of the child to defendant and allowed her to move the child to Georgia on April 28, 2017. Subsequently, the court established a parenting time schedule for plaintiff where N.J. would be with him in the summer months as well as the spring and winter breaks of N.J.'s school year.

Plaintiff's motion for reconsideration of the April 13, 2017 order was denied on July 13, 2017. By this time, the trial judge had retired. The motion

judge concluded that only the judge who made the custody and removal decision could order reconsideration. The motion judge did not have the opportunity to assess the witnesses' credibility. She did note, however, that plaintiff did not allege something specific that the judge missed or even that he misapplied the law. Rather, the court observed that plaintiff simply disagreed with the court's decision. The court provided that it could not grant plaintiff's relief without a "do-over" of the custody case, suggesting the case is more appropriate for appeal. The court also denied a stay of the reconsideration order because it did not think it could stay another court's order. The court made no comments on the merits of the motion for reconsideration.

On appeal, plaintiff contends the trial court failed to apply the factors set forth in N.J.S.A. 9:2-4(c) in awarding residential custody of N.J. to defendant and the decision was not based on evidence before the court. The plaintiff argues the court should not have permitted N.J.'s relocation to Georgia based on the <u>Baures</u> factors, because that case is no longer valid in light of <u>Bisbing v. Bisbing</u>, 230 N.J. 309 (2017). Plaintiff claims the decision must be reversed, the child returned to New Jersey and that the underlying custody determination must be reevaluated based on the child's best interests.

We accord "great deference to discretionary decisions of Family Part judges," Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (citations omitted), in recognition of the "family courts' special jurisdiction and expertise in family matters." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Hitesman v. Bridgeway, Inc., 218 N.J. 8, 26 (2014) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Plaintiff appealed the July 13, 2017 order denying reconsideration. The April 13, 2017 custody and relocation order is not before us for review because plaintiff did not file an appeal of that order. See W.H. Indus., Inc. v. Fundicao Balancins, Ltda, 397 N.J. Super. 455, 458 (App. Div. 2008) ("[I]t is clear that it is only the orders designated in the notice of appeal that are subject to the appeal process and review."); Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 461–62 (App. Div. 2002) (reviewing only denial of the plaintiff's motion for reconsideration and refusing to review the original grant of summary judgment because that order was not designated in the notice of appeal). Thus, the only issue here is whether the court erred in denying reconsideration.

Because this appeal involves a reconsideration order, our review is further limited. State v. Puryear, 441 N.J. Super. 280, 294 (App. Div. 2015). Reconsideration is not appropriate merely because a litigant is dissatisfied with a decision. D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990). Indeed, motions for reconsideration are granted only under very narrow circumstances. "Reconsideration should be used only for those cases which fall into that narrow corridor in which either (1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Ibid.; See Fusco, 349 N.J. Super. at 462.

Here, the court considered that because it had not heard the witnesses or decided the issues, reconsideration was no longer an option and the only avenue open for plaintiff was an appeal. We do not agree the motion court was procedurally barred from reconsidering the court's custody and relocation order under the appropriate reconsideration standard where the trial judge who entered that order had retired. We reject the motion judge's decision that the courthouse was closed to plaintiff on this issue because the trial judge had retired.

Traditionally, judges "sitting in the same court and in the same case should not overrule the decisions of each other." Clarkson v. Kelly, 49 N.J. Super. 10,

16 (App. Div. 1958) (citing TCF Film Corp. v. Gourley, 240 F.2d 711, 714 (3d Cir. 1957)).  However, "there may be exceptional circumstances under which the rule is not to be applied."  Ibid.  In this circumstance where the trial judge retired, the newly assigned judge should have resolved the reconsideration motion under the appropriate reconsideration standard based on the record and transcripts.  It was error not to do so.  We vacate the July 13, 2017 order that, based solely on procedural grounds, denied reconsideration, and we remand that issue to the trial court.

We expressly do not decide the merits of the April 13, 2017 order because it is not before us on appeal.  However, we provide the following guidance to the trial court should it determine to reconsider the April 13, 2017 custody and removal order.  In Bisbing, the Supreme Court recently replaced the Baures standard. 230 N.J. at 309.  Now,

> courts should conduct a best interest analysis to determine "cause" under N.J.S.A. 9:2-2 in all contested relocation disputes in which the parents share legal custody – whether the custody arrangement designates a parent of primary residence and a parent of alternate residence, or provides for equally shared custody. That standard comports with our custody statute, in which the Legislature unequivocally declared that the rights of parents are to be equally respected in custody determinations and stated that custody arrangements must serve the best interest of the child. N.J.S.A. 9:2-4. A number of the statutory best interests factors will

be directly relevant in typical relocation decisions and additional factors not set forth in the statute may also be considered in a given case.

[Id. at 335.]

In this case, the trial court decided the issues of custody and removal together. The trial court said that it was applying a best interest standard even though the April 13, 2017 order was entered before Bisbing was decided. Given the confluence of the custody and removal issues in this case, we deem it appropriate to apply a best interest analysis even though the removal order was entered prior to the Court's decision is Bisbing.

Thus, we vacate only the July 13, 2017 order that denied reconsideration and not the underlying April 13, 2017 custody and removal order, which is not before us and which remains in effect. The court should conduct a case management conference to schedule resolution of the remanded issue.

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION